CITY OF ST. LOUIS v. WEITZEL, *Appellant.*

Division Two, November 19, 1895.

1. **Practice:** PROSECUTION UNDER CITY ORDINANCE: PLEADING. A prosecution under a city ordinance is but a civil action and the sufficiency of the complaint therein must be determined by the same rules that control in other civil cases.

2. ———: ———: ———. A complaint in a prosecution under a city ordinance is sufficient where it describes the act complained of in the language of the ordinance.

3. ———: ———: REMOVING GARBAGE: COMPLAINT. A complaint charging the violation of a city ordinance prohibiting any person from hauling or removing "garbage from hotels" without first obtaining a license, and requiring "carts or wagons" used for the purpose to have license plates attached, is sufficient if it charges the offense in the language of the ordinance, and it need not recite the particular section of the ordinance alleged to have been violated, nor from which hotel garbage was hauled, nor whether a wagon or cart was used.

4. **Pleading:** COMPLAINT: DUPLICITY: PRACTICE: MOTION TO STRIKE OUT. The objection that a complaint charges several separate and distinct offenses in one count should be made by motion to strike out (R. S. 1889, sec. 2058) and can not be made by objection to the introduction of evidence.

5. **Criminal Law:** PRACTICE: LICENSE: BURDEN OF PROOF. In a prosecution for doing an act without first procuring a license, in violation of an ordinance, the burden is on the defendant to show that he had a license.

6. ———: ———: ———: LICENSE PLATES. In a prosecution under an ordinance requiring the owners of wagons used for a particular purpose to take out licenses, and have metallic license plates attached to the wagons, proof that no license was taken out is conclusive proof that plates were not placed upon the wagons as required. But, in such case, the burden is on the defendant to show that the wagon was provided with the required plate.

St. Louis v. Weitzel.

**7. City Ordinance:** PROSECUTION: SEVERAL COUNTS: GENERAL·
VERDICT. Where, in a prosecution for the violation of a city ordi-
nance requiring wagons used for certain purposes to be licensed and
to have a license plate attached to them, the first count of the com-
plaint charged that no license had been taken out and the second
count that no license plate had been attached to the wagon, a
general finding of guilty will be held sufficient, where the trial
court's attention was not called to such finding by appropriate
motion.

**8. ——:** TITLE: REMOVAL OF GARBAGE. A city ordinance entitled
"an ordinance regulating and keeping, storing and handling and
licensing the removal of garbage, grease, offal and other refuse mat-
ter composed of either animal or vegetable matter" and to repeal a
prior ordinance on the same subject "and prescribing penalties for
the violation thereof, and fixing a license tax on vehicles used for the
removal of garbage" is not in violation of a charter provision that no
bill shall contain more than one subject which shall be clearly ex-
pressed in its title, where the ordinance itself relates only to garbage
and offal.

**9. ——:** CONFLICT WITH FORMER ORDINANCE: CHARTER. An ordi-
nance regulating the keeping, removal, etc., of "garbage, grease,
offal and other refuse matter composed of either animal or vegetable
matter" is not in conflict with a prior ordinance defining the word
"garbage" to mean "both animal and vegetable matter, liquid or
otherwise, that attends the preparation, decay and dealing in or
storage of meats, fish, fowls, birds or vegetables" or another defining
it to mean "kitchen offal and other refuse matter composed of either
animal or vegetable substances," within the meaning of a charter
provision that "no special or general ordinance, which is in conflict
or inconsistent with general ordinances of prior date, shall be valid
or effectual until such prior ordinance or the conflicting parts thereof,
are repealed in express terms."

**10. City:** MUNICIPAL ASSEMBLY: ORDINANCES: DEFINITION OF TERMS.
It is as competent for the municipal assembly of a city, within its
legislative powers, to define the terms used in ordinances as it is for
the general assembly of the state to define the terms used in a statute
enacted by it.

**11. ——:** VEHICLES: STREET AND OCCUPATION LICENSE. A city may
require a license plate to be attached to a vehicle licensed for use in
a particular occupation, notwithstanding such vehicle already has a
license plate for street use attached, and the reasonable expense of
furnishing such special license plate may be charged.·

12. ————: CHARTER: VEHICLES: STREET AND OCCUPATION LICENSE. Where the charter of a city empowers it to impose a tax on vehicles for street use and also a tax on occupation, it may require the payment of a license tax on vehicles used in particular occupations, in addition to that imposed for street use.

13. ————: OCCUPATION LICENSE, APPLICATION FOR: TAXING POWER: BOARD OF HEALTH. Provisions of an ordinance prescribing the method of applying for a license are mere matters of detail, and an ordinance requiring that one hauling garbage shall first obtain a license from the city collector and prohibiting the latter from granting it unless the applicant furnish a certificate from the board of health to the effect that he has filed with the board a required statement, is not invalid as delegating the taxing power to the board of health.

14. License, Refusal of Officer to Issue: MANDAMUS. Where the requirements specified by law for procuring a license have been complied with, and the officer in whom authority is lodged refuses to issue it, he may be compelled to do so by mandamus.

*Appeal from St. Louis Court of Criminal Correction.—* HON. J. R. CLAIBORNE, Judge.

AFFIRMED.

The defendant was prosecuted under the provisions of a certain ordinance; the complaint, the following:

"CITY OF ST. LOUIS, November 15, A. D. 1892.
"*John Weitzel, to the City of St. Louis, Dr.*

"To $200 for the violation of an ordinance of said city, entitled: 'An ordinance regulating the keeping, storing and handling and licensing the removal of garbage, grease, offal and other refuse matter composed of either animal or vegetable matter, and to repeal section 394, article 10, chapter 14, and sections 507 and 514, article 16, chapter 14, of the Revised Ordinances of 1887, and prescribing penalties for the violation thereof, and fixing a license tax on vehicles used for the removal of garbage,' being ordinance No. 16,863, approved August 12, 1892, in this, to wit:

"And it is further charged that the said John Weitzel on the fifteenth day of November, 1892, and on divers other days and times prior thereto, did unlawfully interfere with, remove and disturb the garbage, offal and other liquid substance placed in boxes, barrels and tubs at and upon the premises of Frank Nagel (southeast corner Sixth and St. Charles streets), in the city of St. Louis, contrary to the ordinances of said city in such case made and provided.

"And it is further charged that the said John Weitzel on the fifteenth day of November, 1892, and on divers other days and times prior thereto, did haul and remove garbage and offal from hotels, dwelling houses, boarding houses, restaurant and tenement houses in the city of St. Louis without first having obtained a license from said city therefor, and did haul said garbage and offal for the purpose of being used as food for animals located within the limits of the city of St. Louis, and did haul said garbage and offal to rendering and converting establishments which are conducted in an offensive manner, injurious to the health of the citizens of St. Louis, and which are under condemnation by the board of health of the city of St. Louis, and which have not complied with all the provisions of the ordinances governing the establishment, erection and maintenance of rendering factories, contrary to the ordinances of the city of St. Louis in such cases made and provided.

"And it is further charged the said John Weitzel, on the fifteenth day of November, 1892, and on divers other days and times prior thereto, did use a cart, wagon or other vehicle, for the purpose of hauling garbage and offal from hotels, restaurants, boarding houses and dwelling houses, without having displayed on one side of the said cart, wagon or other vehicle, a metallic plate, having cast thereon, in raised letters,

the words 'License to Remove Garbage,' and the figures indicating the number of the plate and the year for which the license is issued, contrary to the ordinance of the city of St. Louis in such cases made and provided.

"On information of L. Harrigan, chief of police of city of St. Louis."

A demurrer to this complaint was filed and overruled, defendant found guilty, and, on appeal to the court of criminal correction, the demurrer was refiled and again overruled.

On the trial of the cause on the merits in the court to which it was appealed, objections were taken to the ordinance mentioned, being read in evidence. These objections are embraced under thirteen general heads, besides a much larger number of subdivided heads, and their diversified ramifications cover nearly three printed pages, which it is unnecessary to set forth at length. These objections to the validity of the ordinance being overruled and the point saved, the ordinance was read in evidence.

In general terms, this ordinance requires that garbage and offal shall be removed and hauled through the streets of the city in water-tight carts, wagons or barrels only, and provision is made to prevent the spilling of the same along the streets and to render the hauling thereof through the city as inoffensive as possible.

Section 5 of the ordinance provides that no person shall haul or remove garbage from hotels, dwelling houses, boarding houses, restaurants or tenement houses, without first obtaining from the city collector a license to do so, and that any person engaged in hauling garbage, either under contract with the city or otherwise, shall pay an annual license of $20 in advance for each cart or wagon; that no license shall be issued

by the collector unless the party applying therefor shall first file with the collector a certificate from the board of health or the chief sanitary officer, to the effect that said party has filed a statement in compliance with section 6 of the ordinance; that no person having a license shall haul garbage or offal to be fed to animals within the limits of the city; that no license shall be issued to haul garbage to any rendering or converting establishment which shall be conducted in an offensive manner, or which, at the time of making the application for the license, is under condemnation as a nuisance by the board of health, or which shall not have complied with all the provisions of the ordinances governing the establishment, erection and maintenance of rendering factories.

Section 6 of the ordinance provides as follows: "All persons, firms or corporations, desiring to have their garbage or offal removed by persons other than the contractor, or any persons, firms or corporations desiring to haul or remove garbage or offal, shall file with the board of health or the chief sanitary officer an application, which application shall state at what point the garbage or offal is located; to what point within or without the limits of the city it is proposed to remove it; the number of carts and wagons proposed to be used, the location where the carts, barrels, wagons or tubs, are kept when not in use, and that said offal and garbage is not to be fed to animals within the limits of the city of St. Louis. On the filing of said application the chief sanitary officer shall furnish to said parties a certificate to be filed with the collector, the number of which certificate shall correspond with the number on the application."

Section 7 requires all wagons so employed to have displayed on one side thereof a metallic plate, having cast thereon in raised letters the words "licensed to

remove garbage," and the figures indicating the number of the plate and year for which the license is issued, such plates to be furnished by the city register to the collector.

Cunningham, garbage inspector, testified that on November 15, 1892, he saw the defendant at Nagel's restaurant, southeast corner of Sixth and St. Charles streets, St. Louis, putting something in a barrel; that he called a police officer and with the officer went to the wagon and asked defendant if he had a garbage permit for hauling garbage, and he said no; that he examined the wagon and found on it two barrels of garbage under the front seat; that the barrels contained refuse from the kitchen—meats, vegetables and bread.

Police officer Reis testified that he arrested the defendant for hauling garbage without a permit. The city then rested.

The defendant asked an instruction for acquittal, which the court refusing to give, defendant excepted.

Winter testified, that his business was that of rendering grease and tallow; that the defendant was his employee, engaged in driving a team for him, hauling garbage and offal from hotels and restaurants; that he had a contract by the month with Nagel for all the kitchen offal from his restaurant, also all garbage, offal and remnants from the tables, all meats, vegetables and bread.

Defendant's counsel then offered in evidence a receipt to Winter from the city collector showing that he had paid $15 as a license for three two-horse wagons for the year 1892. Witness further testified that he got all the garbage and kitchen offal in a sound condition every day, sometimes twice a day, just as it was deposited in barrels or receptacles for him; that he did not permit it to become putrid or offensive; that he took

the garbage to his factory where he rendered it by means of boiling it in tight iron tanks into grease, and the residue he used for fertilizers by farmers and gardeners.

Defendant testified: "I was arrested by officer Reis, * * * I was hauling garbage for the Flynn and Winter rendering establishment from Nagel's restaurant. The garbage and offal that I was hauling was in sound and fresh condition; was in no way offensive and was taken away every day."

Defendant also offered in evidence sections 440 and 498, Revised Ordinances, 1887, which defined the meaning of garbage to include, "every accumulation of both animal and vegetable matter, liquid or otherwise, that attends the preparation, decay, and dealing in or storage of meats, fish, fowls, birds or vegetables," and all "kitchen offal and other refuse matter composed of either animal or vegetable substance."

Defendant thereupon asked the court to instruct for acquittal, which the court refusing to do, defendant excepted, was found guilty and fined $50 and costs, and appealed to this court.

*Louis A. Steber* for appellant.

(1) The ordinance attempts to deprive a person of his property without due process of law, and solely on the whim, caprice, and uncontrolled discretion of the board of health, chief sanitary officer or city collector. Const. Mo., art. 2, secs. 20, 30. *City v. Russell,* 116 Mo. 248, and cases cited; *City v. Hill,* 116 Mo. 527; *State v. Loomis,* 115 Mo. 307; *River Rend. Co. v. Behr,* 77 Mo. 91; *Lowry v. Rainwater,* 70 Mo. 152; *Trenton v. Clayton,* 50 Mo. App. 535; *Yick Wo v. Hopkins,* 118 U. S. 356; *Chicago v. Rumpff,* 45 Ill. 90; *Ex parte Whitwell,* 98 Cal. 73. (2) The city can not deny

to its citizens the use of its streets for any business that is inoffensive. It can not, by merely declaring an act to be a nuisance, make it such. *State ex rel. v. Lowery*, 49 N. J. L. 391; *Rendering Co. v. Behr*, 77 Mo. 91. (3) Even if such power exists in the plaintiff, as it herein contends for, the ordinance must be declared void for unlawfully attempting to delegate to the board of health, chief sanitary officer, or city collector the power to dictate to a person what he shall or shall not do with his property, irrespective of its condition, sound or unsound, fresh or putrid. *St. Louis v. Russell*, 116 Mo. 248, and cases cited; Cooley Const. Lim. [6 Ed.], p. 248, *et seq.* and notes. (4) The ordinance in its practical operation or application is hostile to a particular class of persons removing garbage, to wit: *First.* Persons, etc., other than those with whom the city has contracted or may contract for the removal of the same. *Second.* Persons, etc., under the ban of the disfavor or caprice of the board of health, chief sanitary officer, or city collector. *Hayden v. Noyes*, 5 Conn. 391; Cooley Const. Lim. [6 Ed.], pp. 246, 247, and notes; *Rendering Co. v. Behr*, 77 Mo. 91; *State v. Loomis*, 115 Mo. 307. (5) The ordinance is in restraint of trade and tends to the creation of special or exclusive rights, privileges, and immunities. Const. of Mo., art. 4, sec. 53; Cooley, Const. Lim. [6 Ed.], pp. 244–247, 485; *Rendering Co. v. Behr*, 77 Mo. 91; *In re Jacobs*, 98 N. Y. 98. (6) The power claimed by the city officials to refuse, gives the power to limit the issue of licenses, and the power to limit would have a tendency to create a monopoly, which the law will not tolerate. *St. Louis v. Russell*, 116 Mo. 248; 1 Dill. Mun. Corp. [4 Ed.], sec. 114, p. 180, sec. 362, p. 429; *Tugman v. Chicago*, 78 Ill. 405; *Gaslight Co. v. Saginaw*, 28 Fed. Rep. 529. (7) The power of legislation is not vested in the board of health, its chief sanitary officer, or the city collector.

St. Louis v. Weitzel.

It can only be exercised under the city charter (2 R. S., p. 2092, art. 3, sec. 1), by the "municipal assembly of the city of St. Louis," and by ordinance only. 2 R. S., p. 2096, sec. 26; *Tugman v. Chicago*, 78 Ill. 405; *Chicago v. Rumpff*, 45 Ill. 90. (8) The ordinance is an attempt to collect taxes or license fees, not uniform in its operation. Const. of Mo., art. 10, secs. 3 and 4; *St. Louis v. Green*, 7 Mo. App. 477, s. c., 70 Mo. 562; *St. Louis v. Spiegel*, 75 Mo. 145; *New Orleans v. Insurance Co.*, 23 La. Ann. 449; *State v. Endom*, 23 La. Ann. 663. (9) If it is a tax on the occupation it is not uniform. If it can be taxed, the tax should be on the business as such, and not on the number of carts or wagons used. *State v. Endom*, 23 La. Ann. 663; *New Orleans v. Insurance Co.*, 23 La. Ann. 449; *Sims v. The Parish*, 22 La. Ann. 440; *State v. Corporations*, 4 S. C. 376; *City v. Spiegel*, 75 Mo. 145. (10) There is more than one subject in the title of the ordinance. The charter provision that "No bill * * * shall contain more than one subject, which shall be clearly expressed in its title" (2 R. S., p. 2094, art. 3, sec. 13), is mandatory. *Comm'rs v. Bailey*, 13 Kan. 600; *Swayze v. Britton*, 17 Kan. 625; *Insurance Co. v. Railroad*, 86 Va. 1; *Davies v. Supervisors*, 89 Mich. 295; Cooley, Const. Lim. [6 Ed.], p. 169. (11) The title of the ordinance clearly indicates that it expresses a tax for revenue purposes rather than a mere fee for inspection or regulation. *State v. Burgdoerfer*, 107 Mo. 24, 25, and cases cited; *Knox City v. Thompson*, 19 Mo. App. 523; *Pacific v. Seifert*, 79 Mo. 210. (12) The ordinance is an attempt to collect a double tax or license fee. Const. of Mo., art. 10, secs. 3 and 4; *State v. Railroad*, 75 Mo. 208; *Burke v. Badlam*, 57 Cal. 594. (13) The complaint as filed states no cause of action, because it: *First.* Is vague, indefinite, and uncertain in

its alleged counts. *Second.* Does not individuate the offense in any of its alleged counts. *Third.* Does not inform the defendant of the nature or cause of the action or accusation against him in any of its alleged counts. *Fourth.* Is not sufficiently specific on its face in any of its alleged counts to bar another action for the same alleged offense or offenses (if any such be therein charged). *Fifth.* Does not charge the defendant, in any of its alleged counts, with the commission of any offense known to the law. *Sixth.* Charges the defendant (if anything at all), in one count with the commission of several separate and distinct offenses. *Seventh.* Does not permit defendant to take issue and pleads upon each of what ought to be separately pleaded as separate and distinct causes of action. *State v. Hayward*, 83 Mo. 299; *State v. Crooker*, 95 Mo. 389; *State v. Terry*, 109 Mo. 601. Whether the complaint as filed be treated as in the nature of a civil proceeding for debt, or as a quasi-criminal proceeding, the same rules of law must apply to it. *State v. Hayward*, 83 Mo. 299; *State v. Lowery*, 49 N. J. L. 391.

*W. C. Marshall* for respondent.

(1) The constitutional provision that the subject of all acts shall be expressed in their title, does not require that the substance of the act should be embraced therein. *In re Burris*, 66 Mo. 442. The constitutional provision that no bill shall contain more than one subject, which shall be clearly expressed in its title, is not violated where the general title is not used as a cloak for legislating upon different matters, or where incongruous matters are not joined. *St. Louis v. Green*, 7 Mo. App. 468; *St. Louis v. Green*, 70 Mo. 552; *State ex rel. v. Miller*, 100 Mo. 439; Cooley, Const. Lim. [4 Ed.], p. 175; *People v. Mahaney*, 13 Mich. 495.

(2) The ordinance is valid whether considered as a mere license under the police power or an occupation tax under the taxing power of the charter of St. Louis. *St. Louis v. Green*, 7 Mo. App. 476; *St. Louis v. Green*, 70 Mo. 562; *St. Louis v. Bowler*, 94 Mo. 630; *St. Louis v. Freivogel*, 95 Mo. 533; *City v. Sternberg*, 69 Mo. 301; *St. Paul v. Colter*, 12 Minn. 49. (3) The city of St. Louis under its charter, article 3, section 26, has power to impose, collect, and enforce fines, forfeitures and penalties, for the breach of any city ordinance. *Ex parte Kiburg*, 10 Mo. App. 444, 445. Such ordinances have been uniformly upheld. *City v. Sternberg*, 69 Mo. 302. This is a proceeding to recover a fine for a breach of the ordinance and not a proceeding to collect the amount of the license. (4) The provisions of the ordinance are reasonable. "Municipal corporations are *prima facie* the sole judges of the necessity of their ordinances, and courts will not, ordinarily, review their reasonableness, when they are passed in strict pursuance of an express grant." *City v. Green*, 7 Mo. App. 468, 470; *City v. Sternberg*, 69 Mo. 302. Validity of hauling ordinance. *Kansas City v. Sutton*, Vol. 7, No. 9 Mo. L. N., p. 292. (5) The license imposed by ordinance 16,863 is an occupation tax, placed upon the occupation or business of hauling offal or garbage. The city may levy three taxes under its charter powers: *First.* A tax on property. *Second.* A vehicle tax for the use of streets. *Third.* A tax on the business or occupation. *City v. Green*, 7 Mo. App. 468, 470; *City v. Sternberg*, 69 Mo. 302. (6) Section 5 of the ordinance, which is the section assailed by Mr. Steber, delegates no legislative power. (7) Mandamus will lie to compel officers to perform duties which are purely ministerial. *State ex rel. v. Ruark*, 34 Mo. App. 332. The regulatory provisions of the ordinance are neither arbitrary, unreasonable, nor

unjust, and hence it is a "salutary police regulation designed to protect the safety and health of the inhabitants of the City" of St. Louis, and its validity should be upheld. *Ex parte Cassinillo*, 62 Cal. 538; *St. Louis v. Knox*, 6 Mo. App. 247; s. c., 74 Mo. 79. (8) The ordinance in question is a proper exercise of the police power of the city and can not be assailed on the grounds urged by appellant.

SHERWOOD, J.—At the outset of the discussion of the subject this record presents, we make this announcement, that we do not propose to follow counsel for defendant through the *thirty-eight* heads of his brief. We shall only notice such points as we deem pertinent to, and decisive of, this case.

I.   *a.*   And first as to the sufficiency of the complaint; in regard to which it may be observed that we have always held that a prosecution under a city ordinance is but *a civil action*, and hence the sufficiency of the complaint therein is to be determined by the same rules as are dominant in other civil cases. *Kansas City v. Clark*, 68 Mo. 588; *Ex parte Hollwedell*, 74 Mo. 395. And a complaint is sufficient where, as in the present instance, it describes the act complained of in the language of the ordinance. *St. Louis v. Knox*, 74 Mo. 80. Inasmuch as this is the case here, the complaint is not to be scanned with so keen an eye as would be necessary, were the proceeding strictly criminal in its nature. So that it was not necessary to recite in the complaint the particular section of the ordinance alleged to have been violated, nor from which hotel garbage was hauled, nor whether, so far as concerns the second count, defendant used a wagon or cart. Such particularity never has been demanded even in indictments for the highest crimes.

*b.* As to the complaint charging several separate and distinct offenses in one count (presumably the second), it is quite sufficient to say that no such point was made in the demurrer and could not be made in an objection to the introduction of evidence, even conceding that a demurrer was allowable in causes originating in the police court.

*c.* At common law objections on the score of duplicity could only be reached by a special demurrer pointing out in what the duplicity consisted. 1 Chit. Pl. [16 Am. Ed.], *252, and cases cited; Gould Pl. [5 Ed.], 406, sec. 29; Bliss, Code Pl. [3 Ed.] sec. 288.

*d.* Under our code, duplicity is to be reached by motion to strike out. R. S. 1889, sec. 2058. The like rule seems to prevail under the New York code. Gould Pl., *supra*, note x.

*e.* In any event, therefore, defendant is in no condition to attack the sufficiency of the complaint in this court.

*f.* Nor could he have done so at common law in the trial court by motion in arrest, after having failed to specially demur in manner as aforesaid.. *Whyte v. Rysden,* Cro. Car. 20.

*g.* But we are not of opinion that the strict rules of pleading should apply to cases of this character.

*h.* One of the grounds of the second count of the complaint, was the failure to obtain a license to haul garbage. It was established that no such license was obtained, but the burden was on defendant to show he had obtained a license and not on the city to prove a negative. This is the rule of evidence in regard to licenses for the sale of liquor granted by the state (*Schmidt v. State,* 14 Mo. 137; *State v. Durkem,* 23 Mo. App. 387), and the like reason applies here. This is sufficient to sustain the finding of guilty by the

court, regardless of whether other charges in the second count were proven or not.

*i.* And the finding of guilty might well have been under the third count, in regard to having no metallic plate on the side of the wagon, with the words thereon "licensed to remove garbage." It is said, however, that there is no proof that defendant failed to have such metallic plate on his wagon; but this is an error, because defendant's noncompliance with section 7, is conclusively proven by the fact that he had no license, and of course could have had no metallic plate on his wagon, the latter being the corollary of the former.

*j.* Besides that, under section 7 of the ordinance, the metallic plates are to be furnished by the city register, to the collector, who issues the license, and by whom the record of such plates is to be kept, and the number of the license is to correspond with the number on the plate; so that the burden was on defendant to show his metallic plate on his wagon, as much so as to produce his license. Precisely the same considerations govern in either case. It does not appear on which count the finding of the court was founded; but if only one of them was good, the finding would stand.

*k.* Such general finding would be good in an ordinary civil case unless attention were pointedly called to the matter by appropriate motion. *Sweet v. Maupin,* 65 Mo. 65, and cases cited. No such ground is stated in either motion filed by defendant.

II. The title of the ordinance of conviction is attacked for nonconformity with section 13, article 3, of the charter, which declares that, "no bill * * * shall contain more than one subject, which shall be clearly expressed in its title." This phraseology is borrowed from section 28, article 4, of our state con-

stitution, in reference to which this court has made frequent adjudications.    While the title in this instance can not be approbated as a model, we are not prepared to say it transgresses the bounds established by the charter, since it only contains one subject, to wit, that of the hauling, licensing, and removal of garbage, grease, offal and other refuse matter composed of either animal or vegetable matter, and the ordinances mentioned therein, relate to garbage and offal, and so do the concluding words of the title.    After all, but one subject is contained in the title.

A number of cases in this court afford illustration of this point.    Thus in *State v. Miller*, 45 Mo. 495, when section 32, article 4, of the constitution of 1865, contained this provision, "no law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title," it was ruled that a statute whose title was "an act to prevent the issue of false receipts or bills of lading, and to punish fraudulent transfers of property by warehousemen, wharfingers and others," was not obnoxious to the constitutional objection that the title related to more than one subject, WAGNER, J., remarking: "Now, the nature and object of the act is clearly defined in the title.    It is to prevent the issue of false receipts or bills of lading, and to punish fraudulent transfers of property by warehousemen, wharfingers, and others. * * * By a fair construction, it relates to a class of offenses of a kindred character, all connected, blended, and germane. * * * The act shows clearly that its object and aim was to strike at a whole class of cases, and remedy an existing evil; and whilst warehousemen and wharfingers are specifically enumerated in the title, others are spoken of. * * * A glance at the title would naturally show what was to be found in the law." So, too, under the present constitution it has

been ruled that a bill having for its title "Crimes and Criminal Procedure," clearly indicated what the bill contained. *State v. Brassfield*, 81 Mo. 151.

Likewise in *Ewing v. Hoblitzelle*, 85 Mo. 64, the title of an act was, "An act to provide for the registration of all voters in cities having a population of more than one hundred thousand inhabitants, and to govern elections in such cities, and to create the office of recorder of voters," and upon this it was ruled that the title did not violate section 28, article 4, of the constitution. A similar ruling occurred in *State ex rel. v. Miller*, 100 Mo. 439.

The evident object of the provision of the organic law relative to the title of an act was to have the title like a guide board, indicate the general contents of the bill, and contain but one general subject which might be expressed in a few or a greater number of words. If those words only constitute one general subject; if they do not mislead as to what the bill contains; if they are not designed as a cover to vicious and incongruous legislation, then the title can stand on its own merits, is an honest title and does not impinge on constitutional prohibitions. The same line of remark applies to the title of an ordinance when drawn as above said. But doubtless a much more abbreviated title for the present ordinance would have answered every purpose for including in its body matters germane to the general subject of which its various provisions treat.

III. It is urged that section 1 of the ordinance under review is void because it failed to repeal in terms sections 440 and 498, Revised Ordinance of 1887, as required by section 28, article 3, of the charter, which declares that, "no special or general ordinance, which is in conflict or inconsistent with general ordinances of prior date, shall be valid or effectual until such prior

ordinance or the conflicting parts thereof, are repealed in express terms." The sections above referred to are as follow:

"Section 440. The word 'garbage' shall be held to include every accumulation of both animal and vegetable matter, liquid or otherwise, that attends the preparation, decay and dealing in or storage of meats, fish, fowls, birds or vegetables."

"Section 498. The word 'garbage,' wherever it occurs in this ordinance, shall be construed to mean kitchen offal and other refuse matter composed of either animal or vegetable substances."

These sections are not materially variant in their definitions of the words "garbage" and "offal" from section 1 of the questioned ordinance, and consequently that section is not invalid and could in any event be invalid only to the extent of the conflict, which would to that extent leave the original ordinance in force. While a city can not go beyond its legislative powers, yet while it does not do this it is as competent for its municipal assembly to designate the meaning of the terms employed in ordinances as it is for the general assembly of the state to perform a like office when enacting a statute, and the necessity is frequently as great in the one case as in the other. *Trenton v. Clayton*, 50 Mo. App. 535, asserts nothing to the contrary of this. Besides, the definitions in section 1 aforesaid, accord with those of the standards of our language. "Garbage. 1. Originally the entrails of fowls, and afterwards of any animal. Now, offal, or refuse organic matter in general, especially, the refuse animal and vegetable matter from the kitchen." Cent. Dict. "Offal" is refuse animal matter, and is "garbage;" for "garbage" is both refuse animal and vegetable matter. The definitions given by Webster are to the same effect. Upon these grounds, there is no

merit in defendant's contention on the point in hand.

IV. It is claimed that section 7 of ordinance 16,863 is arbitrary and oppressive in requiring parties who have paid the vehicle license tax, and have the proper "plates" therefor, to use extra so-called "garbage" plates on their wagon at an expense of $20 for each wagon, and is the exaction of another license in disguise.

There can be no question but that one who has already paid a vehicle license tax and has the proper plate therefor, can not lawfully have exacted of him by the city an additional tax under the disguise of a "garbage" plate for the same, for which plate a large sum out of all proportion to its intrinsic value is demanded; for the law will not tolerate such subterfuges of extortion. This is well illustrated by the case of *Walker v. New Orleans*, 31 La. Ann. 828.

There, in substance, the enjoined ordinance provides that, beside the license which is to be obtained by any owner or driver of a vehicle kept for hire, they shall pay, for a pair of license plates to be attached to the vehicle, charges or fees which vary from $5 to $20. These plates, which are intended to readily and conveniently identify the vehicles, cost twenty cents a pair; and, under the ordinance, must be taken from the city at from eight to one hundred and fifty times what they cost. Under this state of facts it was very properly ruled that such an ordinance could not stand the test of judicial scrutiny, though it was admitted that the city had the right to require, for the purposes of identification and inspection, a plate to be placed on the vehicle licensed, but it could not, under the pretext of requiring a plate to be used, impose what was but a disguised and additional license.

What relevancy the case just instanced has to the one at bar, it is difficult to conceive. Here, there is no

exorbitant charge made for the garbage plates to be affixed to each wagon, etc.    Indeed it does not appear that any charge at all is to be made for such plates, and doubtless the city could impose a reasonable charge covering the actual expense of each plate, and the enforcement of the requirement for this would be strictly *regulation* and not taxation, and the former can not be used as a cloak for the latter.    *St. Louis v. Spiegel*, 75 Mo. *loc. cit.* 146, and cases cited.

V. But it is said that, the evidence disclosing that a license tax has already been paid on the wagon, it "can not be taxed twice for the same purpose."    This is doubtless correct, but the city is not here attempting to impose a double tax for the same purpose.    The occupations are entirely different, and the city, under paragraph 5, section 26 of its charter, has the power "to license, tax, regulate or suppress all occupations, professions and trades not heretofore enumerated, of whatever name and character."    This would, of course, include power to license—tax the "business of hauling garbage."    *St. Louis v. Bowler*, 94 Mo. 633.

Under its charter powers the city may levy these taxes:    *First.* A tax on property.    *Second.* A vehicle tax for use of streets.    *Third.* A tax on the business or occupation.    *St. Louis v. Green*, 7 Mo. App. 468, 470; *St. Louis v. Sternberg*, 69 Mo. 302.

And, if different occupations are pursued, it is competent to impose a license tax on each occupation. Of this there can certainly be no dispute, and the contention can not therefore prevail that a license tax paid on a wagon for the general use of the streets, can be converted at the will of the licensee to pursue with that wagon any other occupation or trade, etc.    As well might a merchant licensed under the provisions of section 6919, Revised Statutes, 1889, assume the role of an *auctioneer*, section 678, Revised Statutes, 1889, and

(apart from the privilege conferred by section 693) claim, because he had taken out a license on the stock of goods in his store as a *merchant*, that, therefore, the state had no further concern in the matter, and he might choose the *manner* in which he might sell his goods over the counter, whether by public or private vendue, and then if the state interfered with his operations as auctioneer vociferously assert that the law was arbitrary, unjust, oppressive and unconstitutional.

And it is a matter of no importance that the particular license tax be imposed directly on the occupation, or whether it be imposed on the implements by means of which the occupation is conducted; such matters of detail rest in the discretion of the lawmaking power. If the power to levy the tax be conceded, if it operates oppressively, this, speaking in general terms, is a consideration which is properly addressed to the municipal assembly and not to the courts. *St. Paul v. Colter*, 12 Minn. 41. We discover, however, nothing oppressive in an ordinance which imposes the same burdens on all who pursue the same occupation, as must be confessed is the case here.

VI. Section 5 of the ordinance now being contested *does not delegate* the taxing power to the board of health. The provision as to how the application for a license shall be made is a mere matter of detail, and a similar provision has been held valid in *St. Louis v. Knox*, 6 Mo. App. 247, affirmed, 74 Mo. 79, where a similar ordinance was held valid, requiring an application for a license to *sell* horses, etc., to be made through the board of police commissioners. Nor is it true that it rests in the whim or caprice of such board, or any city official, whether such license shall be granted. If the conditions specified in the ordinance are complied with by the applicant, and no license be issued, then a ready remedy is furnished by *mandamus* to compel the recal-

citrant official to perform his simple ministerial duty.

Finding no error in the record, we affirm the judgment. All concur.