# THE STATE v. GREAT WESTERN COFFEE AND TEA COMPANY, Appellant.

### Division Two, February 3, 1903.

1. **Constitutional Law:** TITLE AND BODY MUST BE GERMANE: MANUFACTURE AND SALE: ALUM BAKING POWDERS. The provisions of the body of an act must be germane to the subject in the title. So that where the only purpose of an act is stated in the title to be "to prevent the use of unhealthy chemicals in the manufacture of any article used or to be used in the preparation of food," so much of the body of the act as prohibits the manufacture of such articles is constitutional, but so much of it as inhibits the sale of such articles is not constitutional, because there is nothing about selling it "clearly expressed in its title." In this case the defendant was found guilty of selling a baking powder which contained alum, under

an act which made it "unlawful for any person or corporation to manufacture, sell or offer to sell any article intended to be used in the preparation of food, in which there is alum." *Held,* that the act is available for punishing only manufacturers of such baking powders, and not the sellers thereof.

2. ————: ————: GENERAL RULE. The provisions of an act must be closely allied, fit and appropriate, and of a similar nature, to the subject designated in its title. They can not be permitted to extend to and include another incongruous subject not referred to in the title.

Appeal from St. Louis Court of Criminal Correction.— *Hon. Willis H. Clark,* Judge.

REVERSED.

*Thos. B. Harvey* for appellant.

It may have been the intent and design of those interested in the passage of this act to have drawn it in such a way as to induce the legislators, by the title, to believe that the act extended only to those engaged in the preparation or manufacture of baking powder, and that it did not in any way affect retail grocers who deal in the baking powder, or the citizens of Missouri who use it, while at the same time, by the body of the act, they may have designed it to extend to the retailer, as well as to the manufacturer. Indeed, in view of the facts appearing in the testimony in the Layton case, 160 Mo. 474, and of the facts which are matters of common knowledge, that these prosecutions are being conducted by the Royal Baking Powder Trust, and that they are the only ones beneficially interested in the prosecutions, it is not fair to argue that the intent and purpose in the passage of the act was as we have stated. But in procuring the passage of the act, entitled as it is, we respectfully submit that they went beyond the limits defined by all of the authorities, and that the act is clearly contrary to the Constitution, and therefore, as to retail grocers at least, it is absolutely void. "The title to an act defines its scope; it can contain no valid

provision beyond the range of the subject there stated.''
Southerland, Stat. Const. (1891), sec. 102; Sedgwick on
Stat. and Const. Law, 521. ''The courts can not enlarge
the scope of the title; they are vested with no dispens-
ing power; the constitution has made the title the ex-
clusive index to the legislative intent. It is no answer
to say that the title might have been made more compre-
hensive if in fact the Legislature have not seen fit to
make it so.'' Cooley, Const. Lim. (6 Ed), p. 178; Kan-
sas City v. Payne, 71 Mo. 162; Dorsey's Appeal, 72 Pa.
St. 195; In re Breene, 14 Cal. 404; Com. v. Moorhead,
7 Pa. Co. Ct. Rep. 515; Henderson v. Ins. Co., 155 Ind.
23; McDuffie v. State, 87 Ga. 687; Sasser v. State, 99
Ga. 54; Miller v. Jones, 80 Ala. 89; State v. Young, 47
Ind. 150; State v. Newton, 45 N. J. L. 472; Dempsey
v. State, 94 Ga. 766; Ellis v. Hutchinson, 70 Mich. 156;
People v. Allen, 42 N. Y. 404; State v. Barrett, 27 Kan.
215; Walker v. State, 49 Ala. 329; Ex parte Lacy,
93 Va. 159; In re Houck, 70 Mich. 396; State
v. Burgdoerfer, 107 Mo. 25; People v. Gadway,
61 Mich. 285; Town v. Sainer, 59 Iowa 26; Bron-
son v. Oberlin, 141 Ohio St. 478; Crabb v. State, 88 Ga.
584; Whitman v. State, 80 Md. 410; State v. Davis,
(Ala.) 30 So. 344; Yahn v. Merritt (Ala.), 25 So. 71;
State v. Walker (La.), 29 So. 973; State v. Bixman, 162
Mo. 68; State v. Jackson Co. Ct., 102 Mo. 531; State v.
Schofield, 41 Mo. 39; Whitman v. Railroad, 131 Mo. 617;
State ex rel. v. Baber, 129 Mo. 483. In the enactment
of similar statutes heretofore, our Legislature has uni-
formly made the title indicate the fact when both the
manufacturer and the seller, or persons occupying simi-
lar relations towards each other, were to be included
within the terms of the law. The title to such acts are
in the nature of a legislative construction of the require-
ments of such titles. Liquor Adulteration Statute,
General Stat. 1865, chap. 63; amended by Laws 1877,
p. 340; An Act for the Preservation of Game, Laws
1877, p. 333; Preservation of Fishes, 1879, p. 153; An
Act Prohibiting the Manufacture and Sale of Oleomar-
garine, Laws 1887, p. 173; An Act Prohibiting the Adul-

teration of Vinegar, Laws 1891, p. 218; Pure Beer Act, Laws 1899, p. 228.

*Edward C. Crow,* Attorney-General, with whom are *Judson & Green,* for the State.

(1) There is no merit in the contention that the title of the act is in any way deficient. It is not necessary for a title to descend into details, nor make a digest of the statute. State v. Bengsch, 70 S. W. 716. The title in this case is comprehensive and appropriate, and clearly declares its purpose to prevent the use of unhealthy chemicals or substances in the preparation of food. The sale can not be prevented unless the sale of the prohibited substance manufactured in other States is also prohibited. But one subject is dealt with in the act—the prevention of the use of injurious chemicals in food. Manufacture and sale are both means by which the sale is effected. It is needless to cite again the very numerous cases in this court on the question of title construing this provision of the Constitution. State v. Mead, 71 Mo. 266; State v. Brassfield, 81 Mo. 151; St. Louis v. Weitzel, 130 Mo. 600; In re Bockstruck, 136 Mo. 335. The statute is appropriately headed in the revision—"Certain substances not to be used in compounds intended to be used in preparation of food." (2) The statute must be construed in the light of the obvious purpose of its enactment, and therefore in prohibiting the use of alum in food, referred to the alum which was then being used in human food, and not the alum which was not and could not be used in food. State v. Layton, 160 Mo. 474; Black on Interpretation of Laws, sec. 49; State v. Bishop, 128 Mo. 373; State v. Bixman, 162 Mo. 5; United States v. Hartwell, 6 Wall. 386; 23 Am. and Eng. Ency. of Law (1 Ed.), p. 377.

FOX, J.—This prosecution was begun under an act approved May 11, 1899, and found on page 170 of Laws of 1899; and the information, omitting the caption and oath, reads as follows:

"H. A. Clover, Jr., prosecuting attorney of the St. Louis Court of Criminal Correction, now here in court, on behalf of the State of Missouri, information makes as follows: That Great Western Coffee and Tea Company, a corporation existing under and by virtue of the laws of the State of Missouri, duly organized and doing business in this State, did in the city of St. Louis, on the 6th day of July, 1901, unlawfully sell and offered to sell a certain compound and preparation, to-wit, one can Great Western Brand Baking Powder, and said compound and preparation was so sold and offered for sale for the purpose of being used and was intended to be used in the preparation of food, and in which said compound preparation and baking powder so sold as aforesaid there was then and there alum, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State."

This information was challenged by appellant in a motion to quash on the following grounds:

1. Because it does not allege facts sufficient to show any violation of law.

2. Because all the facts are insufficiently alleged.

3. Because there is no allegation that the defendant knew the article sold contained alum; and it is not alleged that it was intended to be used in food for human beings.

4. Because the Act of 1899 creating the alleged offense is violative of section 28 of article 4 of the Constitution of the State of Missouri, in this, that the title of the act is leveled against manufacturers only, while the body of the act attempts also to punish not only the manufacturers, but the seller of the inhibited article.

Upon the aforesaid motion being overruled and exceptions saved, a plea of not guilty was entered, and the case was tried before the court sitting as a jury.

This prosecution resulted from a purchase of a can of baking powder by W. N. Miller, at the store of the appellant, a corporation, doing business in the city of St. Louis, on the 23rd day of May, 1901. The evidence on the part of the State, according to the experts testi-

fying in her behalf, tended to show that the baking powder contained alum, and it is contended by the State that the alum as described by her experts, is the character of alum against which the statute in controversy is directed. On the part of the appellant, the evidence tends to show that the baking powder contained no alum such as was contemplated by the legislative mind at the time of the enactment of the law, which is charged to have been violated. Defendant further introduced its manager, A. H. Freeman, who testified that the defendant had bought the can of baking powder in question from a most reputable wholesale grocery firm of St. Louis with their assurance that it was a pure phosphate powder containing no alum whatever.

The cause was submitted to the court without a jury, and defendant was convicted and fined one hundred dollars. Motions for new trial and in arrest of judgment were filed in proper time, both of which were overruled by the court. Whereupon, the defendant brings the cause here by appeal.

The criminal charge in this cause is a misdemeanor, and this court only has jurisdiction to dispose of it by reason of the constitutional question involved, hence, the all-important question submitted to us for determination is the alleged unconstitutionality of the act, upon which this prosecution is predicated, in so far as it applies to sellers who are not manufacturers.

The counsel for appellant challenged the validity of this act upon which this information is based, upon the sole ground that it is violative of section 28, article 4 of the Constitution of this State, in this, that the title of the act is directed against manufacturers only, while the body of the act attempts also to punish not only the manufacturers, but the sellers of the inhibited article.

This act was approved May 11, 1899, and the title as well as the body of the act, is as follows:

"An Act to prevent the use of unhealthy chemicals or substances in the preparation or manufacture of any article used or to be used in the preparation of food.

"Be it enacted by the General Assembly of the State of Missouri, as follows:

"Section 1. That it shall be unlawful for any person or corporation doing business in this State to manufacture, sell or offer to sell any article, compound or preparation, for the purpose of being used, or which is intended to be used, in the preparation of food, in which article, compound or preparation, there is any arsenic, calomel, bismuth, ammonia or alum.

"Section 2. Any person or corporation violating the provisions of this act shall be deemed guilty of a misdemeanor and shall, upon conviction, be fined not less than one hundred dollars, which shall be paid into and become a part of the road fund of the county in which such fine is collected."

The provision of the Constitution involved in this controversy is that contained in section 28, article 4, which says that "no bill [then follow the exceptions, which are not applicable to this act], shall contain more than one subject which shall be clearly expressed in its title."

We fully agree with the learned counsel for appellant that the phase of this question presented now, is presented for the first time to this court for determination. An examination of the innumerable adjudicated cases, wherein similar constitutional provisions were involved, fails to disclose an interpretation and application of this constitutional provision to the same situation or facts as are presented in this cause.

I fully concur in the very appropriate expression of BURGESS, J., in the case of Witzman v. Railroad, 131 Mo. 618: "Adjudicated cases do not, as a general rule, afford us much assistance in passing upon questions of this character, other than in a general way, as each case must be adjudged according to its own peculiar facts and the directness or remoteness, as the case may be, of its provisions to matters in consonance with its title."

With the suggestion of the difficulties as to light from adjudicated cases, we approach the determination of this question upon the facts, as disclosed by the title,

as well as the body of the act.

The title of this act, if construed literally, is directed against the very origin of the evil intended to be remedied, those who prepare the article used or to be used, or those who manufacture it. It is to prevent the use of unhealthy chemicals or substances in the preparation or manufacture of the article used or to be used in the preparation of food. The title to this act only embraces one class, that is, those who prepare or manufacture the article. The body of the act, section 1, extends the act to all classes of retailers, who may sell the article in which there is any of the unhealthy chemicals designated by the statute.

In other words, the man who conducts his little grocery store, in some country village, who knows nothing of the preparation or manufacture of this article, buys it in good faith and sells it in good faith to his customers, is included in the body of the act, the title of which refers to those exclusively who prepare or manufacture the article.

The vital question is, is the selling of the article by the retailer as contemplated and prohibited in the body of the act, so closely allied or nearly related to the subject as contained in the title as to be properly included in the subject as designated by such title? Is it germane to it? It may be said that the ultimate purpose of the subject designated in the title is to prevent the use of unhealthy chemicals in the preparation of food—hence, the prohibition in the body of the act against the retailer is germane to it, for if you punish and prevent the retailer from selling, it would follow that the preparation and manufacture of the article would cease. Could we not say, with the same force of reasoning, that an act entitled, "To prevent the illegal sale of intoxicating liquors," could appropriately include in the body of the act the person who would purchase intoxicating liquor which was being illegally sold? They are distinct classes; yet if you could punish and thereby prevent the individual from purchasing the illegally-sold

Vol 171 mo—41.

intoxicants, the illegal selling would cease. Upon principle, this fairly illustrates the question presented for our determination.

We take it that the provisions in the body of the act must be germane to the subject in the title. In other words, they must be closely allied, fit and appropriate, of a similar nature, to the subject designated in the title. Now can it be said that the subject of this act, which has for its purpose the prohibiting of the use of unhealthy chemicals in the preparation and manufacture of an article, shall be extended to the retailer for selling the article after it is prepared and manufactured? The one who prepares and manufactures the article knows that he is embodying in the preparation a substance that is prohibited. The other, a retailer, sells it without any knowledge of its contents, in good faith to his customers. Yet upon the contention of the State, his act is so closely allied to the subject of the title of the act, he is equally guilty, as the other class, which the title alone embraces, who commit the act prohibited with full knowledge of its criminality.

To extend the provisions of this act, directed, as the title indicates, against those who knowingly violate its provisions, to a distinct class of subjects, who have no knowledge whatever of the contents of the article sold, is not fitting and appropriate to the subject in the title of the act.

We are aware of that fundamental principle of constitutional law that "unless an act of the Legislature is clearly in conflict with the Constitution, it will be upheld, and if there exists a reasonable doubt upon that question, such doubt should be resolved in favor of the constitutionality of the law. The act should be so construed as to maintain its validity if that can be done by a fair construction of its provisions, but at the same time it is equally fundamental that its title must not be misleading, and should give fair notice of its contents." [Witzman v. Railroad, 131 Mo. 618.]

The evident object of the organic law relating to the title of an act, SHERWOOD, J., in case of St. Louis

v. Weitzel, 130 Mo. 616, very aptly puts it, ''was to have the title like a guideboard, indicate the general contents of the bill, and contain but one general subject, which might be expressed in a few or a greater number of words. If those words only constitute one general subject; if they do not mislead as to what the bill contains; if they are not designated as a cover to vicious and incongruous legislation, then the title can stand on its own merits.'' The learned judge in that case evidently had in view acts similar to the one before us, when he used the term, ''If the words of the title do not mislead and are not designed as a cover to vicious and incongruous legislation.'' The title to this act, which to the members of the Legislature and the public indicated that it would tear up root and branch an evil, by striking at the fountain-head of the wrong, was misleading; and did cover up that *incongruous* provision which made persons guilty of a criminal act of which they had no knowledge. *Incongruous* is the proper term, for ''it denotes that kind of absence of harmony or suitableness of which the taste and experience of men take cognizance.''

''The title to the bill should so express the subject of an act in such terms that the members of the General Assembly and the people may not be left in doubt as to what matter is treated of.'' [State v. Burgdoerfer, 107 Mo. 30.]

And it is elsewhere said very aptly ''that to be clearly expressed certainly does not mean something that is dubious and therefore is not clearly expressed.''

The title to this act is clearly leveled at those who prepare and manufacture the article, while the enactment extends to those who have nothing to do with its manufacture or preparation. This can not be construed as being a compliance with article 4, section 28, of the Constitution which requires that the title shall contain but one subject and shall be clearly expressed.

Our attention is directed by counsel for the State to the cases of State v. Layton, 160 Mo. 474; State v. Bengsch, 170 Mo. 81; State ex rel. v. Mead, 71 Mo. 266;

State v. Brassfield, 81 Mo. 151; St. Louis v. Weitzel, 130 Mo. 600; State v. Bockstruck, 136 Mo. 335.

In the case of State v. Layton, supra, the question of the sufficiency of the title to the act was not involved nor was it passed upon.   The entire controversy in that case was as to the power of the Legislature to suppress a baking powder admitted to be in general use; but whose wholesomeness or unhealthfulness, notwithstanding its general use, was in sharp and forceful dispute.   And the further question as to whether under the particular facts, the Legislature had the power to prohibit the use of certain articles in the preparation of food.   The defendant in that case admitted that he prepared or manufactured the article.

The case of State v. Bengsch, supra, in no way conflicts with the conclusions reached in this case.   The subject in the title of the act indicated clearly the character of legislation and no one could be misled by its provisions.   Whether, as in that case, you called the tax a license tax on distilled liquor, or a property tax on distilled liquor, did not mislead anybody; the subject of a tax on distilled liquor was clearly set forth.   And, as the learned judge says in that case, the title to the act could have been very much simplified.   The title to that act could have been very appropriately as follows: ''An act relating to the manufacture and sale of distilled and vinous liquors.''   All the details necessary to carry out the ultimate purpose of such subject would be germane to it.   But that can not be said of the act before us. Particular classes are designated and a particular offense indicated in the title to the act, whereas, in the body of the act, a different offense and a different class are included.

In the case of State ex rel. v. Mead, supra, the subject of the title was concerning popular elections, and the body of the act provided that vacancies occurring might be filled by gubernatorial appointment.   This does not militate against the views expressed as to the act in question.   In that case, the subject was the filling of the offices by election; officers will die, and as incident to

carrying out the purposes indicated by the subject, their places must be filled, and a provision to fill the vacancy was germane to the subject of the title. The other cases referred to, State v. Brassfield, supra, and St. Louis v. Weitzel, supra, only require a brief inspection to determine that they are not in conflict with the result reached in this case.

It is further contended by respondent that by extending the provisions of this act to sellers of the article or compound, is the only protection to the public, who buy the article. Suffice to say, that a rigid enforcement of the law, against the persons who prepare and manufacture the article would tend very greatly to the prevention of the article ever reaching the hands of the seller. Again, it is not contended that the seller can not be reached, but if so, it must be done by the subject being clearly expressed in the title.

The result reached in this case is not without authority in this State, and many other States with a constitutional provision similar to our own, upon which to base it. The very clear announcement of the principle of Judge Cooley that "The Constitution has made the title the exclusive index to the legislative intent," is quoted approvingly in the case of Kansas City v. Payne, 71 Mo. 162.

Referring again to the late utterance of the court in the case of State v. Bengsch, supra, it is very strongly intimated that if the contention of the State in that case was that the tax was upon the occupation, instead of a license or property tax, as indicated by the subject of the title, it would be in conflict with the constitutional provision involved in this cause.

In the case of State ex rel. K. C. Park District v. County Court Jackson Co., 102 Mo. 537, Barclay, J., in a very able, clear and concise manner, announced some of the vital principles involved in the interpretation of the constitutional provision under discussion. It is very aptly said in that case, "That the commands of the people, expressed in the Constitution, can not be ignored. That the mandate on this subject possesses

some vigorous vitality and was intended to be enforced on proper occasions, can not be gainsaid.'' And the opinion finally announced the overshadowing principle that the topics in the body of the act should be kindred in nature and have a legitimate and natural association with the subject of the title; and if the provisions of the act itself can not be fairly construed as embraced within the title of the act, then it is in conflict with the Constitution.

The case of People v. Beadle, 60 Mich. 22, is one involving as near the same principle involved in this case as we have been able to find. It is specially applicable to the case before us, because the same argument is made by respondent in that case as to the act being germane to the subject of the title, as is presented in this. The title of the act was, ''An act to regulate the sale of liquors; to prohibit the sale to intoxicated persons and to persons in the habit of getting intoxicated.'' While this is not the complete title, it is the portion of it applicable to the point decided. The act created an offense against persons getting drunk at any hotel, public assembly, etc. It was distinctly held that this provision was in conflict with the Constitution and void for that reason. The Attorney-General presented that very plausible argument that it is germane to the subject, for the reason that if you could prevent drunkenness, the amount of liquor sold would be materially reduced. But the court held and said that, ''It is nothing more or less than the insertion in the body of the act, of a clause creating and punishing a misdemeanor entirely foreign to the ostensible purpose of the statute.'' [Miller v. Jones, 80 Ala. 89; State v. Young, 47 Ind. 150; State v. Barrett, 27 Kan. 213.]

This last case cited is an answer to the question as to whether a statute would be held valid, the title of which was to prevent the illegal sale of intoxicating liquors, and the body of the act, upon the theory that it would prevent the sale by punishing the person who purchases it, is extended to that class. This act in the case last cited was held unconstitutional and the logic

and reasoning of the court in its clear and lawyer-like discussion of the question, is unanswerable. State v. Walker, 49 Ala. 329, also treats this question along the same line. While there are numerous other cases, in other States, adhering to the same principle of interpretation of the Constitution, the cases referred to are so nearly alike in point of fact that a careful analysis of them will disclose strong support of the result reached in this case. As the conclusions reached by the court in this case will prevent any further prosecutions under that subdivision of the act, it is unnecessary to pass upon the other questions presented by the record in this cause.

This act, so far as it is applicable to sellers, who are not manufacturers, is in conflict with section 28, article 4, of the Constitution of Missouri, and is therefore invalid.

This cause is reversed and the defendant and its recognizors are discharged. All concur.