THE STATE, Appellant, v. BENGSCH.

In Banc, November 12, 1902.

170    81
170   $526
171   2643
171   2644
171   2645

1.  **Intoxicating Liquors: SPECIAL LICENSE TAX: SALE WITHOUT LICENSE: SUFFICIENCY OF INFORMATION.** Act April 17, 1901, section 4, taxing the manufacture and sale of liquor, does not apply to liquors manufactured for export, or before the enactment of the statute. An information charged that accused, a dramshop-keeper, unlawfully and knowingly received into his dramshop one barrel containing distilled liquor, commonly known as "whiskey," which barrel did not have affixed thereto license-tax stamps, and that accused sold one gallon of distilled liquor, commonly known as "whiskey," drawn from a barrel to which license stamps were not attached. *Held*, that, as the information did not show that the whiskey received and sold was within the terms of the act, it was insufficient.

2.  ————: ————: **TITLE OF ACT: CONSTITUTIONAL REQUIREMENT.** The title of Act April 17, 1901, was, "An act to provide for a state license tax on distilled liquors, including whiskey," etc., "and distilled spirits of all kinds, wines and all kinds of vinous liquors; to create the office of special license commissioner, and to provide for the appointment thereof by the Governor." The act imposed a property tax on distilled liquors manufactured in the state, or brought into the State for sale therein, required vendors of liquors to take out a license, and, by construction, exempted pure alcohol, domestic wines, and liquors manufactured for export, from taxation.

Vol 170 mo—6

*Held,* that the title to the act was not a violation of Constitution, article 4, section 28, requiring that no bill shall contain more than one subject, which shall be clearly expressed in its title.

3. ————: ————: CONTEMPORANEOUS CONSTRUCTION: EMERGENCY CLAUSE: REVENUE: UNIFORM TAXATION. Act April 17, 1901, was entitled "An act to provide for a state license tax on distilled liquors, including whiskey," etc. Section 4 provided that "there shall be paid for the right and privilege to manufacture for sale in this State, distilled liquors," etc., "and for the right or privilege to sell such distilled or vinous liquors or products, brought or shipped into this State for sale herein, a special license tax of ten cents for every gallon," etc. Section 25 provided that, "there being a deficiency in the revenue of the State," an emergency existed, which warranted the act's taking effect from its passage. The stamps issued pursuant to the act, and the construction given to it by the Governor and Attorney-General, indicated that it was intended as a revenue measure. Section 24 of the act preserved in force Revised Statutes 1899, chapter 22, section 3015, giving permission to wine-growers in the State to sell their own wine on their own premises. *Held,* that as the act did not apply to liquors manufactured for export, nor to domestic wines or pure alcohol, and as it was essentially a revenue measure, it violated Constitution, article 10, section 3, declaring that taxes shall be uniform on the same class of subjects within the territorial limits of the levying authority.

4. ————: ————: EMERGENCY CLAUSE: REVENUE MEASURE. Section 25, constituting the emergency section, was sufficient in itself to stamp the measure as one for revenue merely.

5. ————: ————: UNIFORMITY. So far as liquors manufactured for sale in the State, and liquors shipped into the State for sale therein, were concerned, the act was not bad for want of uniformity; each class of liquors being taxed the same amount.

6. ————: ————: ACT AS ENTIRETY: VOID IN TOTO. The act, being framed and enacted as an entirety, so that it presumably would not have received the legislative sanction but for the fact that it was intended to operate as a whole, was void *in toto.*

7. ————: ————: EXEMPTIONS FROM TAXATION. The act, in view of its exemptions, was also invalid as infringing Constitution, article 10, section 4, which commands that all property subject to taxes shall be taxed in proportion to its value.

8. ————: ————: ————: CONSTITUTIONAL PROVISION: VIOLATION. Constitution, article 10, section 6, specifically describes what property shall be exempt from taxation, and section 7 declares that all laws exempting property other than that enumerated shall be void.

*Held*, that the act, in view of its exemptions, was void under these provisions.

9. ———: ———: DRAMSHOP-KEEPER: RIGHT TO ASSAIL STATUTE. Where a dramshop-keeper is prosecuted for selling liquor on which a tax has not been paid, he may assail the statute imposing the license as unconstitutional in respect to manufacturers; the provisions of the act being so related as to avoid it as an entirety.

10. ———: ———: WILSON LAW: INTERSTATE COMMERCE. Under the act of Congress of August 8, 1890, known as the "Wilson Law," which provides that intoxicating liquors transported into any State or Territory, and remaining there for use, sale, or storage, shall, on arrival, be subject to the operation and effect of local laws enacted in the exercise of the State's police powers, the question whether the Act of April 17, 1901, imposing a tax on liquors imported for sale into the State, violates Constitution United States, article 1, section 10, prohibiting any State from laying imposts or duties on imports, or section 8, giving Congress the power to regulate interstate commerce, can not arise.

11. ———: ———: EQUAL PROTECTION OF THE LAW. Act April 17, 1901, imposes a tax on liquor manufactured for sale within the State, but does not impose a tax on its manufacture for export. *Held*, that the act violates Constitution United States, amendment 14, guaranteeing to each citizen of the United States and of each particular State the equal protection of the laws.

#### SEPARATE OPINION BY VALLIANT, J.

1. Information: INVALIDITY OF STATUTE: APPELLATE PRACTICE. The information in this case is sufficient. If it were not, the validity of the statute would not be before the appellate court for decision.

2. Purpose of Act: POLICE REGULATION: INCIDENTAL REVENUE. If the passage of an act is an exercise of the police power of the State, it is not rendered invalid because a revenue incidentally results therefrom.

3. ———: REVENUE MEASURE. The purpose of the act in question, considered as a whole, is to levy a tax of ten cents on the gallon on distilled liquors manufactured in the State for sale here or brought into the State for that purpose. It is therefore a tax on property, and as such is indefensible under article 10 of the Constitution.

4. ———: TITLE OF ACT: USE OF MEANINGLESS WORDS. The title to a legislative act should not declare the purpose to be to provide both for a license tax and a property tax. A title to an act which says it is "an act to provide for a state license tax on distilled liquors," contains an inconsistent association of words, for

there is no such thing as a license tax on distilled spirits. A license tax is one thing, a property tax is another. And if the only way to render the title intelligible is to disregard the word "license" that will be done, even if by so doing the title clearly expresses the purpose of the act to be to raise a property tax, and the act, because of that purpose, becomes unconstitutional.

Appeal from Bates Circuit Court.—*Hon. W. W. Graves,* Judge.

Affirmed.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

(1) The act contains but one subject and it is clearly expressed in its title. Section 28, article 4 of the Constitution must be given a reasonable construction. Hannibal v. Marion Co., 69 Mo. 572; State ex rel. v. Ransone, 73 Mo. 78; State ex rel. v. Shepherd, 74 Mo. 310; State ex rel. v. County Court, 102 Mo. 537; Alleghany County Homes Cases, 77 Pa. St. 77; State v. Matthews, 44 Mo. 523; State ex rel. v. Laflin, 75 Mo. 358; State v. Brassfield, 81 Mo. 151; Ewing v. Hoblitzelle, 85 Mo. 64; St. Louis v. Teifel, 42 Mo. 578; De-Both v. Coal Company, 141 Mo. 497; State ex inf. v. Ins. Co., 152 Mo. 1. Details of legislation fairly germane to the general subject of the act need not be specifically mentioned in the title. State ex rel. v. County Court, supra; State ex rel. v. Ransone, 73 Mo. 88; State v. Matthews, 44 Mo. 526; State ex rel. v. Blackstone, 115 Mo. 427; State v. Bennett, 102 Mo. 364; Lynch v. Murphy, 119 Mo. 169; State ex rel. v. Bronson, 115 Mo. 276; State ex rel. v. Slover, 134 Mo. 16; State v. Bixman, 162 Mo. 1. The requirements of the Constitution in this respect do not call for a table of contents in the title or the caption of a statute. State ex rel. v. County Court, 128 Mo. 441; Cooley on Constitutional Limitations, p. 172. The generality of a title is therefore no objection to it so long as it is not made a cover of legislation incongruous in itself and which by no

fair intendment can be looked upon as having necessary and proper connection. Ewing v. Hoblitzelle, supra; Daubman v. Smith, 120 U. S. 517; Jonesboro v. Railroad, 110 U. S. 192; Kurtz v. The People, 33 Mich. 279; Donnersburger v. Prendergrast, 128 Ill. 229; Fuller v. People, 92 Ill. 182; Benz v. Weber, 81 Ill. 288. If the act contains but one subject and that is fairly expressed in its title, it will be broad enough to embrace everything having a natural connection with it. DeBoth v. Coal Co., supra. The act is a police measure designed as a means of limiting, restricting and restraining a traffic which is dangerous to the best interests of the State. It can not, therefore, be said to be an exercise of the property-taxing powers under the State Constitution. Black on Intoxicating Liquors, sec. 65. (2) The tax imposed by the act is not a property tax. When the entire act is taken into consideration there can be no question but that it is a license tax looking toward the regulation of the liquor traffic for the purpose of protecting the health, morals and good order of the people of the State. Such laws are valid and do not conflict with the restrictions of the State Constitution regarding the exercise of the taxing power. State ex rel. v. Hudson, 78 Mo. 302; State v. Hipp, 38 Ohio St. 225; Tiedemann on Police Powers, pp. 275, 279. That the liquor traffic can be controlled, regulated and in fact, prohibited by the police power of the State, can not be denied. State v. Austin, 10 Mo. 591; State v. Lemp, 16 Mo. 389; State v. Searcy, 20 Mo. 489; Burch v. Mayor, 42 Ga. 598; State v. Brennan, 2 S. Dak. 384; Boston Beer Co. v. Massachusetts, 97 U. S. 33; License Cases, 5 How. 504; Mugler v. Kansas, 123 U. S. 623. When it has been judicially ascertained that the traffic may be restrained, it is a matter of legislative discretion what kind of restraint can be imposed. Tiedemann on Police Powers, pp. 278, 299; Cooley on Taxation, p. 592. The tax or fee exacted by this act is not a tax upon property, as shown by the following authorities: Cooley on Taxation, 586; Black on Intoxicating Liquors, sec. 55; State ex rel. v. Hudson,

78 Mo. 303; Albrecht v. State, 34 Am. Rep. 737; State v. Bixman, supra.; State v. Strange, 39 Ohio St. 414; Senior v. Batterman, 44 Ohio St. 661. It is within the power of the Legislature to tax the liquor traffic, and an act providing for the taxing of such is not a bill to raise revenue, but simply an exercise of the police power of the State. Black on Intoxicating Liquors, sec. 55; Kurth v. State, 86 Tenn. 134. A law may be referred to the police power of the State notwithstanding it may be a revenue-producing measure, and the Legislature may have expected the act to create a fund for governmental purposes. State v. Hudson, 78 Mo. 303; Tiedemann on Police Powers, 277. It has been held that notwithstanding such an exaction may be called a tax, still its imposition may be referred to the police power. The dramshop-license law now in force is good evidence of the truth of this statement, that a revenue-producing measure may still be a police regulation. The fees paid for licenses may yield a large revenue and it may not be doubted that the Legislature intended that this should be the result. While providing for the regulation of a business, the general effect of which is to obstruct good morals, the law-making power is not bound to exclude from its consideration the fact that revenue may be produced by the enforcement of such regulation. Cooley on Taxation (2 Ed.), 587. It is immaterial that a property tax has been paid upon the value of the liquor. Other exactions and duties may be laid by the State upon the business. It has been held that taxes or fees imposed upon the business of manufacture and sale of intoxicating liquor may be classified according to the kind of drinks sold or that they may be regulated by the amount as well. Albrecht v. State, 8 Tex. App. 226; State v. Bixman, supra. If the power of a State to prohibit the manufacture and sale of intoxicating liquors be conceded—and it is no longer open to question—it will follow unavoidably that the power of the State to regulate the sale of such articles and to impose conditions, burdens and responsibilities on those who desire to engage in the traffic,

is practically unlimited. Black on Intoxicating Liquors, sec. 39; State v. Luddington, 33 Wis. 113. The provisions of the act attach to and become a part of the regular license laws of the State regulating the right to manufacture and sell distilled liquors. It will not do to say that this is not a tax upon the privilege of business on the ground that the right to engage in the business is given by another statute. It was still within the power of the Legislature to impose additional burdens, conditions and restrictions upon the traffic. It is not necessary that all the regulations upon the liquor traffic should be contained in one statute. State v. Luddington, 33 Wis. 107; Kurth v. State, supra. The State plainly has the power to regulate the manufacture and sale of intoxicating liquors within its border. It may entirely prohibit the same or permit it upon such terms as the Legislature may see proper. Having the right to absolutely prohibit, it may authorize the manufacture and sale upon such terms as may seem best to control and regulate the business in the State. Vance v. Vanderhook Company, 170 U. S. 438. (3) The special license tax provided for in the law operates uniformly upon all persons and classes. It seems that in a number of cases in this State objection has been unsuccessfully made to license charges on the ground that some are required to pay more than others, and such cases fall directly within the line of the case at bar. St. Louis v. Sternberg, 69 Mo. 289; Glasgow v. Rowse, 43 Mo. 479; St. Louis v. Greene, 70 Mo. 562; St. Louis v. Bowler, 94 Mo. 634; State v. Bixman, supra. (4) The fourteenth amendment to the Constitution of the United States is not violated. The statute accords equal protection of law to all persons falling within its provisions. As a measure of police regulation, looking to the preservation of public morals, this law is not repugnant to and violates no clause of the fourteenth amendment to the Constitution of the United States. State v. Brennan, 2 S. Dak., 390; Boston Beer Company v. Massachusetts, 97 U. S. 25; Foster v. Kansas, 112 U. S. 201; Powell v. Pennsylvania, 127 U. S. 678.

Soon after the passage of the Wilson Act its constitutionality was called to the attention of the Supreme Court of the United States, which declared that the purpose of Congress in adopting the statute was to allow State laws to operate on liquors shipped from one State into another, so as to prevent the sale of original packages in violation of State laws. The constitutionality of the act was upheld. In re Rahrer, 140 U. S. 545; Rhodes v. Iowa, 170 U. S. 112; Vance v. Vanderhook, 170 U. S. 445. (5) What may be deemed an emergency is a purely legislative question. The courts will not inquire into it, nor entertain any question of its sufficiency. Sutherland on Statutory Construction, sec. 108; Gentile v. State, 29 Ind. 409; Carpenter v. Montgomery, 7 Blatchf. 415; Biggs v. McBride, 17 Ore. 640. The emergency clause is no part of the bill; in fact, the bill might become a law without the emergency clause. Had it been defeated, and failed to receive the necessary two-thirds vote in either branch of the Legislature, it would not have appeared in this case and defendant would not then have had the opportunity to assert that it indicated the full context of the act and was the only meaning that should be given to it. When the entire act is taken into consideration, it will not do to say that the Legislature intended to violate the Constitution of the State and pass an unconstitutional measure. The purpose and intent of the act can not be controlled by the emergency clause, simply because revenue is indirectly raised by it. The same might be said of our regular dramshop license law; a vast amount of money is collected into the State treasury by it, yet no one will deny it is a police regulation. Every presumption in favor of a legislative enactment should be indulged in and the judiciary will be justified in pronouncing the law unconstitutional only when it becomes manifestly a usurpation of power. Wells v. Railroad, 110 Mo. 286; State v. Hardware Co., 109 Mo. 108; Dewalt v. Bartly, 146 Pa. St. 529; Cole v. Falls, 90 Tenn. 466. With the wisdom and expediency of a law the judiciary has nothing to do. Such questions address

themselves solely to the lawmaking department of the government. Hills v. Chicago, 60 Ill. 86; Bennett v. Boggs, 1 Baldwin, 74. The bill proper was passed by the Legislature before the emergency clause was passed upon. It became and was a law, so far as the Legislative branch was concerned, before the adoption of the emergency clause, and as such it was purely a police regulation. The fact that money should be incidentally raised from the enforcement of the law might have moved the Legislature to adopt the emergency clause, and knowing that it would yield a handsome revenue, there is nothing in the way of a constitutional objection that would prevent them from passing a law that it might be thus enforced, because it would at the same time aid in the advancement of the morals of the community and regulate, to the extent contained in the bill, the whiskey traffic throughout the State. That this measure is a police regulation and not purely a revenue measure can not be questioned in the light of the decision of this court in the case of State v. Bixman, 162 Mo. 1, which involved the constitutionality of what is known as the "Beer Tax Law."

*Klein & Hough* for respondent.

(1) The subject of the bill is not clearly expressed in its title. Section 28, art. 4, Constitution; State ex rel. v. Miller, 100 Mo. 439; State ex rel v. Co. Ct., 102 Mo. 531; State v. Morgan, 112 Mo. 202; State v. Bronson, 115 Mo. 271; Lynch v. Murphy, 119 Mo. 163; State v. Co. Ct., 128 Mo. 427; State v. Baker, 129 Mo. 482; Witzman v. Railroad, 131 Mo. 612; State v. Heege, 135 Mo. 112; State v. Swirzler, 143 Mo. 287; Ewing v. Hoblitzelle, 85 Mo. 64; Kansas City v. Payne, 71 Mo. 159; State v. Persinger, 76 Mo. 346; State v. Co. Ct., 41 Mo. 39. (2) The bill is a revenue measure and must be classed and judged as such. Cooley on Taxation (2 Ed.), 586-7; Black on Intoxicating Liquors, sec. 107; Sutherland on Statutory Construction, sec. 402; St. Joseph v. Ernst, 95 Mo. 360; License Tax Cases, 5 Wall. 462; U. S. v. Railroad, 91 U. S. 72;

State v. Bixman, 162 Mo. 1; opinion of Attorney-General; construction of License Commissioner; stamps. (3) Being a revenue measure in which the amount of tax to be paid depends upon the amount of property sold, it amounts to a tax on property. Crow v. Missouri, 14 Mo. 237; Brookfield v. Tooey, 141 Mo. 619; State ex rel. v. Stephens, 146 Mo. 684; State v. Welton, 91 U. S. 275. (4) As a tax on property it is invalid: (a) As being in excess of the constitutional limitation. Sec. 8, art. 10, Constitution; Glasgow v. Rowse, 43 Mo. 490; St. Louis v. Ins. Co., 47 Mo. 150; St. Louis v. Spiegel, 90 Mo. 587; St. Louis v. Spiegel, 75 Mo. 145; St. Louis v. Bowler, 94 Mo. 630; St. Joseph v. Ernst, supra; State v. Tracy, 94 Mo. 217; Brookfield v. Tooey, 141 Mo. 619; State v. Switzler, 143 Mo. 287; State ex rel. v. Stephens, 146 Mo. 662. (b) As not being in proportion to value. Sec. 4, art. 10, Constitution; Deal v. Mississippi County, 107 Mo. 464; State v. Switzler, 143 Mo. 287; State v. Julow, 129 Mo. 163; State v. Granneman, 132 Mo. 326; State v. Walsh, 136 Mo. 400. (c) As lacking uniformity. Section 3, art. 10, Constitution; Crow v. Missouri, 14 Mo. 237; State v. Switzler, supra. (5) There may be other taxes than taxes on property. Glasgow v. Rowse, supra; Ex. Co. v. City, 66 Mo. 680; St. Joseph v. Ernst, supra. (6) But such other taxes are nevertheless subject to the constitutional provision as to uniformity. Kansas City v. Whipple, 136 Mo. 475; 17 Am. and Eng. Ency. Law (2 Ed.), p. 223; City v. Spiegel, 75 Mo. 145; St. Louis v. Consolidated, 113 Mo. 86; Black on Intoxicating Liquors, sec. 109. (7) And the same is true if only a police regulation. Kansas City v. Whipple, 136 Mo. 475; Black on Intoxicating Liquors, secs. 109 and 55. (8) The police power of the State is no greater as applied to the manufacture or sale of intoxicating liquors than it is as applied to any other trade or occupation. State v. Austin, 10 Mo. 591; State v. Simmons, 12 Mo. 268; City v. Laughlin, 49 Mo. 562; Ex. Co. v. City, 66 Mo. 680; Tiedemann's Limitations of Police Power, sec. 103, p. 311. (9) Whether classified by this court as an occupation tax

or a police regulation, it violates the Federal Constitution in that it amounts both to a regulation of interstate commerce and a discrimination against it. Cooley on Taxation (2 Ed.), 94-5; State v. Welton, 91 U. S. 275; Broon v. Maryland, 12 Wheat. 419; Robbin v. Taxing Dist., 120 U. S. 489; Railroad v. Pa., 15 Wall. 232; Bowman v. C. & A. W., 125 U. S. 465; Leisy v. Hardin, 135 U. S. 161; In re Rahrer, 140 U. S. 545.   (10) The exemption in favor of native wines makes the act inoperative as to all vinous liquors. Tiernan v. Rinker, 102 U. S. 123.   (11) If fairly inferable that the Legislature would not have passed the act omitting all vinous liquors, the invalidity of the act in that particular makes the whole act void.

The statute on which this case is founded is as follows:

An act to provide for a State license tax on distilled liquors, including whiskey, brandy, rum, gin and distilled spirits of all kinds, wines and all kinds of vinous liquors; to create the office of special license commissioner, and to provide for the appointment thereof by the governor.

*Be it enacted by the General Assembly of the State of Missouri, as follows:*

Section 1.   There is hereby created the office of "special license commissioner," which shall be filled by appointment by the governor, by and with the advice and consent of the senate, within ten days after the taking effect of this act. Such officer shall be known as the "special license commissioner of the state of Missouri," and shall hold his office for a term of four years and until his successor is appointed and qualified. He shall be of good moral character, over the age of twenty-five years, a citizen of the United States and of this state for more than two years next prior to his appointment. He shall give a bond to the state in the sum of twenty-five thousand dollars ($25,000), to be approved by the governor, conditioned for the faithful and correct performance of the duties of his office, which bond shall be filed and kept in the office of the

secretary of state.   He shall not at the time of his appointment nor during his term of office be in the employ of any person, company, association or corporation engaged in the manufacture or sale of distilled liquors, including whiskey, brandy, rum, gin or distilled spirits of any kind, or wines of any kind or any class of vinous liquors, nor shall he at such time or during such term be engaged, or directly or indirectly interested in the manufacture or sale of whiskey, brandy, rum, gin or distilled spirits of any kind, or wines of any kind or any class of vinous liquors, or a director or stockholder in any corporation, association or joint stock company engaged in the manufacture or sale of such product.

Sec. 2.   The board of public buildings shall furnish to the special license commissioner rooms or apartments in the capitol building sufficient for the transaction of the business of his office.

Sec. 3.   The special license commissioner shall keep and maintain his office at the seat of government in the City of Jefferson, and shall employ such clerical assistance as may be necessary to enable him to fully and fairly discharge the duties of his office.   His salary shall be three thousand dollars ($3,000) per annum. The number of clerks to be employed as above provided shall not exceed three, including a stenographer.   The compensation of the stenographer shall be seven hundred and fifty dollars ($750) per annum, and the clerks shall not receive more than fifteen hundred dollars ($1,500) per annum each, all of such salaries to be paid monthly out of any fund appropriated for that purpose.

Sec. 4.   There shall be paid for the right and privilege to manufacture for sale in this state distilled liquors, including whiskey, brandy, rum, gin and distilled spirits of all kinds, wines of any kind and every class of vinous liquors, and for the right or privilege to sell all such distilled or vinous liquors or products brought or shipped into this state for sale herein, a special license tax of ten cents for every gallon and at a like rate for any other quantity or fractional part of a gal-

lon contained in a receptacle of any kind or character whatever.

Sec. 5.   It shall be the duty of the state treasurer, upon the taking effect of this act, to provide, for the payment of such tax, suitable stamps denoting the amount of tax required to be paid on the gallons, quarts, pints, sixths, eights or other receptacles of such distilled or spiritous liquors, wines or vinous liquors, and shall safely keep the same, together with the plates used in making them, when not in actual use.   He shall from time to time upon demand, deliver such amount or number of the stamps to the special license commisisoner, as may be required, taking therefor his receipt and shall charge said commissioner with the same.

Sec. 6.   Every person, company, association or corporation engaged in the business of manufacturing or distilling the distilled liquors hereinbefore enumerated and all wines and vinous liquors or other similar liquors or products, or engaged in the business of dram-shop-keeping or in otherwise selling such distilled liquors or products, wines or vinous liquors, or other similar liquors or products, shall make application to the special license commissioner for a permit to purchase stamps from him, for and during a term not to exceed one year after such permit shall have been granted, and until such application has been made, it shall be unlawful for the special commissioner to sell, supply or furnish said person, company, association or corporation with the permit mentioned herein.   Before the permit shall be issued by the special license commissioner, such person, company or association making the application shall furnish the commissioner with satisfactory proof that the person, company, corporation or association will conduct said business at such a place and in such a manner as to comply in all respects with the laws of this state and that such applicant will not, directly or indirectly, permit or allow said distilled or vinous liquors to be sold or offered for sale in or about any wine rooms, brothel or assignation house, or gambling house in this state.   And such person, company, cor-

poration or association shall also satisfy said license commissioner, before he shall issue said permit, that said person, company, corporation or association nor any agent or representative thereof is directly or indirectly interested in or connected with any wine room, brothel or assignation house, or gambling house, and if any person, company, corporation or association violates this provision of this act, the license commissioner shall revoke the permit of said company, corporation or association. The special commissioner shall receive a fee of $1.50 for issuing a permit, which shall be paid into the state treasury and become a part of the general revenue fund of the state. The permit herein authorized shall, in no case, be issued for a longer time than until the expiration of the applicant's right to manufacture or sell such distilled liquor or wine or vinous products, as expressed in his dramshop, manufacturer's or other license.

Sec. 7. It shall be unlawful for the special license commissioner to sell or furnish stamps to any person, corporation, company or association that does not hold a permit from him for the purchase thereof.

Sec. 8. The special license commissioner is required to keep on hands at all times a sufficient supply of stamps equal in amount to two months' sale thereof, and such stamps shall be sold by him to the persons hereinbefore mentioned and not otherwise. The special license commissioner shall keep an account of the number of permits issued by him as hereinbefore provided for and the number and value of the stamps sold by him to each person, company, association or corporation. The proceeds of the sale of the stamps shall be by the commissioner paid immediately into the state treasury.

Sec. 9. Every person, company, association or corporation engaged in the distilling, manufacture or sale of the distilled liquors or products hereinbefore mentioned or wines or vinous liquors above enumerated, or similar distilled or vinous liquors or products, shall be required to obtain from the special license commissioner, and not otherwise, the proper stamps and shall

affix upon the barrel, keg or other receptacle in which any distilled spirits, whiskey, brandy, gin, rum, wines of any class or kind or any distilled or vinous liquors is contained when manufactured for sale and sold in this state, or removed for sale in this state, the stamp or stamps denoting the amount of the tax required upon such whiskey, brandy, gin, rum, wines of any class or kind or any distilled or vinous liquors in such a way that the same may be readily observed, and at the time of affixing the same to the barrel, keg, flask, bottle, case or other receptacle, the said person, firm, association or corporation shall cancel the stamp or stamps by writing or imprinting thereon the name of such person, company, association or corporation by whom the said liquor was made, or by whom it is sold or offered to be sold, or the initials thereof, and the date when cancelled, and every person, corporation, company or association who refuses or neglects to affix and cancel the stamps required in the manner aforesaid or who affixes a false or fraudulent stamp thereon, or knowingly permits the same to be done, shall pay a penalty of one hundred dollars for each barrel, flask, bottle, case or other receptacle on which such omission or fraud occurs.

Sec. 10.  The special license tax herein provided for shall be paid by the person, persons, company, association or corporation manufacturing or distilling the distilled liquor, wine or vinous liquor of any kind, or other similar liquor or product for sale in this state, and such person, persons, company, association or corporation shall purchase the stamps and affix them to the barrels, kegs, flasks, bottles, cases or other receptacles as herein provided; and the person, company, association or corporation offering for sale or selling any distilled or vinous liquors manufactured or distilled in any other state or country and exported into this state shall purchase the special license stamps from the commissioner and affix them to the barrels, kegs, flasks, bottles, cases or other receptacles in which such distilled or vinous liquor is contained.

Sec. 11. Whenever any manufacturer, cartman, agent for transportation or other person sells, removes or receives or purchases or in any way aids in the sale, removal, receipt or purchase of any distilled liquors, wines or vinous liquors of any kind or other similar liquors or product contained in any barrel, keg or other vessel or receptacle from any distillery or distillery warehouse intended for sale in this state, upon which the stamps required by this act have not been affixed, or on which a fraudulent or false stamp is affixed, with knowledge that it is such, or on which a stamp once cancelled is used a second time, he shall be deemed guilty of a misdemeanor and subject to a fine of not less than fifty dollars nor more than one hundred dollars.

Sec. 12. Whenever any dramshop keeper, retail dealer or other person dealing in or selling or offering for sale said distilled or vinous liquors, or the agent or employe of any such dramshop keeper, retail dealer or other person selling or offering for sale said distilled or vinous liquors, or other person withdraws or aids in the withdrawal of any whiskey, rum, gin, brandy, wine or other distilled or vinous liquors from any barrel, keg, flask, bottle or other receptacle containing the same, without destroying or defacing the stamp affixed thereon as soon as all the said liquor is drawn therefrom or withdraws or aids in the withdrawal of any distilled or vinous liquor from any barrel, keg, flask, bottle, case or other receptacle upon which the proper stamp is not affixed, he shall be guilty of a misdemeanor and punished according to the provisions of section eleven of this act.

Sec. 13. When the distilled or vinous liquor or other similar product is contained in pint or quart bottles, it shall not be necessary to affix the stamp on the bottle, but it shall, when not affixed on the bottles, be affixed to the case, box or other receptacle in which the bottles are contained.

Sec. 14. Any person who shall sell any distilled or vinous liquor contained in or drawn from barrels, kegs

or other receptacles as herein provided, which shall not have affixed thereto the requisite stamp or stamps properly cancelled; and any dramshop keeper or other person authorized to sell said distilled or vinous liquor at retail or otherwise, shall not receive into his warehouse, dramshop, saloon, store or other room or building, any such distilled or vinous liquor unless the barrels, kegs or other receptacles in which it is contained have affixed thereto the proper stamp or stamps.

Sec. 15.  Every distiller who sells distilled or vinous liquor at retail at the distillery warehouse or other place where the same is made or kept shall affix and cancel the proper stamps upon the barrels, kegs, flasks, bottles or other vessels in which the same is contained, and shall keep an account of the quantity so sold by him and of the number and size of the barrels, kegs or other vessels in which the same has been contained and shall make a report thereof, verified by oath, monthly, to the special license commissioner.

Sec. 16.  Every person who makes, sells or uses any false or counterfeit plate for printing or making stamps, which is in imitation of or purports to be a lawful stamp or die of the kind mentioned in this act, or who procures the same to be done or aids and assists in its doing, shall be guilty of a felony and punished by imprisonment in the penitentiary for a term not less than two years nor more than five years.

Sec. 17.  Every person, association, company or corporation engaged in the distilling or manufacturing of distilled or vinous liquors as herein enumerated for sale in this state, and every person, company, association or corporation engaged in the sale of said distilled or vinous liquors whether as a dramshop keeper or otherwise, shall make a report in writing each month to the special license commissioner, which said report shall show the number of barrels, kegs or other receptacles, together with the quantity of distilled, vinous or other such liquors therein contained, manufactured and sold in this state by them, and on which the special li-

cense tax provided by this act is to be paid; it shall also show the gross amount of stamps used and cancelled by such person, company, association or corporation. The day of the month on which the report is to be made shall be fixed by the special license commissioner. The report shall be sworn to by the person, company, association or corporation or some member thereof.

Sec. 18. It shall be the duty of the special license commissioner to enforce the provisions of this act, to make inquiry and investigation as to its violation and for that purpose may examine persons on oath and compel their attendance at any place in any county where the investigation takes place. He shall have the right to examine the property and books of any person, company, association or corporation liable to pay the license tax herein required and do any and all things necessary for a full and fair enforcement of the provisions hereof. When required to leave his office on official business his necessary expenses shall be paid by the state.

Sec. 19. Any person violating any of the provisions of this act, or any person aiding, assisting or procuring the same shall, unless otherwise provided, be deemed guilty of a misdemeanor and shall forfeit and pay a fine of not less than fifty dollars nor more than one hundred dollars, and shall have his license to manufacture or sell distilled or vinous liquors revoked.

Sec. 20. Every railroad, express or transportation company shall, when requested, furnish to the special license commissioner a duplicate bill of lading or receipt showing the name of the consignor and consignee, date, place received, destination and quantity of distilled and vinous liquor or other such product received by them for shipment to any point in this state. Upon failure to comply with the provisions herein, said railroad, express or transportation company shall forfeit and pay to the state of Missouri the sum of fifty dollars for each failure, to be recovered in any court of competent jurisdiction.

Sec. 21. All prosecutions for fines and penalties and all actions of every kind herein for the enforcement

of this act shall be commenced in any court of competent jurisdiction of the state. And when said actions have been begun it shall be the duty of the attorney-general to take charge of and conduct the same. The attorney-general shall be the legal adviser of the license commissioner and shall aid him in the enforcement of this act whenever necessary. The attorney-general shall prosecute all actions for the recovery of license taxes due the state.

Sec. 22. It shall be lawful for the license commissioner or any agent or representative of said commissioner, as well by night as by day, to enter into any distillery, manufactory, building or place used for the business of distilling or storing the distilled or vinous liquors hereinbefore enumerated, and to examine any and all such premises and any and all such liquor or liquors contained therein, whenever he shall ·deem the same necessary and proper.

Sec. 23. There is hereby appropriated out of the state treasury, chargeable to the general revenue fund. for the years 1901 and 1902, for the pay of the special license commissioner, six thousand dollars; for the pay of two clerks, six thousand dollars; for the pay of the stenographer, fifteen hundred dollars; for stationery and printing and traveling expenses and all other items of expense necessarily incurred in the transaction of the official business of the said special license commissioner, five thousand dollars; and for expenses in carrying out the provisions of this act on the part of the state treasurer to be expended by him and under his direction, including postage, expressage, plates, stamps and extra help, the sum of ten thousand dollars: Provided, that nothing in this act shall be so construed as to in any way interfere with wine-growers within this state and the sale of wine grown and produced by them.

Sec. 24. Nothing herein contained shall be construed to repeal or in anywise affect the provisions of chapter 22, Revised Statutes of Missouri of 1899.

Sec. 25. There being a deficiency in the revenues of the state, creates an emergency within the meaning

of the constitution; therefore, this act shall take effect and be in force from and after its passage.

SHERWOOD, J.—Prosecution for alleged violation of some of the provisions of an act approved April 17, 1901, entitled as follows:

"An act to provide for a State license tax on distilled liquors, including whiskey, brandy, rum, gin and distilled spirits of all kinds, wines and all kinds of vinous liquors; to create the office of special license commissioner, and to provide for the appointment thereof by the governor."

As the act in its entirety will accompany this opinion it is deemed unnecessary to set it forth here at large. But such sections of it which occasion demands to be specifically discussed, will be set forth herein; among such sections thus requiring specific discussion is the last one of the series, which reads this way:

"Sec. 25. There being a deficiency in the revenues of the State, creates an emergency within the meaning of the Constitution; therefore, this act shall take effect and be in force from and after its passage."

The information which was filed to enforce certain provisions, and to punish certain alleged violations of the act, is in these words:

"Miles S. Horn, prosecuting attorney within and for the county of Bates in the State of Missouri, informs the court that Paul Bengsch on the 15th day of February, 1902, at the county of Bates and State of Missouri, being then and there a dramshop-keeper, did then and there unlawfully and knowingly take and receive into his dramshop one barrel containing forty gallons distilled liquor, commonly known as whiskey, which said barrel containing whiskey as aforesaid, did not have affixed thereto adhesive special license tax stamps of the value and at the rate of ten (10) cents for each gallon of said whiskey then and there contained in said barrel; contrary to the statute in such case made and provided and against the peace and dignity of the State.

"And the said Miles S. Horn, prosecuting attorney as aforesaid, of the county and state aforesaid, further informs the court that the said Paul Bengsch, on the 15th day of February, 1902, at the county of Bates, and State of Missouri, being then and there a dramshop-keeper, did then and there unlawfully and knowingly sell one gill of distilled liquor, commonly known as whiskey, which said liquor was then and there unlawfully and knowingly drawn from a barrel, which did not then and there have affixed thereto adhesive special license stamps of the value and at the rate of ten (10) cents for each gallon then and there contained in said barrel; contrary to the statute in such cases made and provided, and against the peace and dignity of the State.

"And the said Miles S. Horn, prosecuting attorney aforesaid, further informs the court that the said Paul Bengsch, on the 15th day of February, 1902, at the county of Bates and State of Missouri, being then and there a dramshop-keeper, did then and there unlawfully and knowingly sell to one John Doe, whose real name is to informant unknown, one . . . of distilled liquor, commonly known as whiskey, without first having had, obtained and received from the special license commissioner of the State of Missouri, a permit authorizing and entitling him, the said Paul Bengsch, to purchase special license stamps from the said special license commissioner; contrary to the statute and against the peace and dignity of the State."

Responding to this information, defendant filed a motion to quash it, which, omitting caption, alleges the following grounds:

"Comes now the defendant herein and moves the court to quash the information heretofore filed in said cause and each count thereof, for the following reasons:

1. That the act of the General Assembly of Missouri of April 17, 1901, upon which said information is based, is unconstitutional, inoperative and void, because:

(a)  Said act violates section 28, article 4 of the

Constitution of Missouri, which provides that no bill (except certain bills therein specifically designated) shall contain more than one subject, which shall be clearly expressed in its title.

(b) Said act is violative of section 8 of article 10 of the Constitution of Missouri, which provides that the State tax on property, exclusive of the tax necessary to pay the bonded debt of the State, shall not exceed twenty cents on the hundred dollars valuation, and whenever the taxable property of the State shall amount to nine hundred million dollars, the rate shall not exceed fifteen cents.

(c) Said Act of April 17, 1901, violates section 4 of article 10 of the Constitution, which provides that all property subject to taxation shall be taxed in proportion to its value.

(d) Said act violates section 3 of article 10 of the Constitution of Missouri, which provides that taxes may be levied and collected for public purposes only, and that they shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax; for the reason that if the act is not a tax upon property, it is a tax upon an occupation and lacks uniformity, and that those engaged in the same class of business are required to pay different amounts and for the further reason that it requires one who sells spirits brought into this State to pay for the privilege of selling; whereas nothing is required to be paid for the privilege of selling distilled spirits which are manufactured in this State.

2. Said act is violative of the Constitution of the United States, in that:

(a) It violates the fourteenth amendment to said Constitution, which provides that no State shall deny to any person within its jurisdiction the equal protection of the laws.

(b) It violates section 8, article 1 of said Constitution, which gives Congress the exclusive right to regulate interstate commerce.

(c) It violates the second clause of section 10,

article 1 of said Constitution, which prohibits any State from laying an impost upon an import.

3.   Because said Act of April 17, 1901, is inoperative and void for uncertainty and for want of adequate and practical provisions to carry it into execution.

4.   Because it does not sufficiently appear in the information what the spirits are which defendant is charged to have sold.

5.   Because the package from which the spirits are alleged to have been sold is not sufficiently described in the information.

6.   Because it is not sufficiently charged in the information whether the spirits in question were manufactured or distilled in this State or whether they were manufactured or distilled in some other State or country, and brought into this State for sale herein."

1.   The first point which will receive discussion is the sufficiency of the information, treating the act on which it is bottomed as constitutionally valid.

Section 4 of the act has these provisions:   "There shall be paid for the right and privilege to manufacture for sale in this State distilled liquors, including whiskey, brandy, rum, gin, and distilled spirits of all kinds, wines of any kind and every class of vinous liquors, and for the right or privilege to sell all such distilled or vinous liquors or products, brought or shipped into this State for sale herein, a special license tax of ten cents for every gallon and at a like rate for any other quantity or fractional part of a gallon contained in a receptacle of any kind or character whatever."

This section, as will readily be noted, applies alone to two classes of persons, and demands at their hands, "a special license tax"; first, those who "manufacture for sale in this State distilled liquors, including whiskey, rum, gin and distilled spirits of all kinds," etc., etc; second, those who "sell all such distilled or vinous liquors or products brought or shipped into this State for sale herein." Unless the whiskey belongs to one of these classes, it is quite too obvious for discussion that no tax is imposed by, or collectible under, the statute,

For instance, if the whiskey were manufactured in this State for sale outside of this State, no tax, under the very terms of the act, could be imposed upon it. Or, if the whiskey were manufactured in this State prior to the taking effect of the act, or had been brought into this State prior to that time, inasmuch as the act is to be taken as prospective, and not retrospective, in its operation, the information would charge no offense; and it is the duty of the draftsman to so draw the information as to make it show a prima facie case; and unless it does this, it charges *no offense,* since it is unquestionably necessary that every thing requisite to be proved must be alleged in order to conviction; and the law in the same beneficent spirit which presumes innocence until guilt be established, will also presume that what the information *does not charge, does not exist.* [Mears v. Com., 2 Grant's Cas. (Pa.) 385; State v. Barbee, 136 Mo. loc. cit. 444; State v. Hayward, 83 Mo. loc. cit. 308, 309, 310, and cas. cit.] "The defendant must be specially brought within all the material words of the statute; and nothing can be taken by intendment." [1 Whart. Cr. Pl. and Prac. (9 Ed.) sec. 220; 1 Bishop Cr. Proc., secs. 81, 86, 88, 519; State v. Sekrit, 130 Mo. loc. cit 406; State v. Burke, 151 Mo. loc. cit. 140, 141, 142, and cas. cit.]

And it is one of the tests of the insufficiency of an indictment that every allegation may be taken to be true, and yet the defendant be guilty of no offense. [Com. v. Harris, 13 Allen 539; Com. v. Collins, 2 Cush. 558; Turner's Case, 9 Q. B. 80; Reg. v. Harris, 1 Denison C. C. 466; Reg. v. Rowlands, 2 Denison C. C. 377.]

Here, if defendant merely sold whiskey, he was plainly guilty of no violation of the statute of prosecution.

The same defective allegation as to the kind of liquor is apparent in other counts of the information, and consequently it was properly quashed, regardless of other considerations.

2. To such other considerations we now address ourselves.

Objection is taken here, as in the lower court, to the title of the act in question. Section 28, article 4, of our Constitution, with one exception, commands that: "No bill shall contain more than one subject, which shall be clearly expressed in its title." Section 32, article 4, of the Constitution of 1865, is couched in this language: "No law enacted by the General Assembly shall relate to more than one subject, and that shall be clearly expressed in the title." So it seems that section 28 is the more stringent of the two provisions.

In State ex rel. v. Mead, 71 Mo. 266, it was ruled that where the title of an act was, "Concerning popular elections," and the body of the act provided that vacancies occurring might be filled by gubernatorial appointments, such provision was germane to the subject treated of in the title, and therefore in accord with the constitutional command.

And in State v. Brassfield, 81 Mo. 151, where the title was, "Crimes and Criminal Procedure," it was ruled that such a title clearly indicated what the bill contained.

In City of St. Louis v. Weitzel, 130 Mo. 600, the city charter was modeled after the provisions of section 28, aforesaid; and there, the title of the ordinance discussed was: "An ordinance regulating the keeping, storing and hauling and licensing the removal of garbage, grease, offal and other refuse matter composed of either animal or vegetable matter," and to repeal a prior ordinance on the same subject. "and prescribing penalties for the violation thereof, and fixing a license tax on vehicles used for the removal of garbage," is not in violation of a charter provision that no bill shall contain more than one subject which shall be clearly expressed in its title, where the ordinance itself relates only to garbage and offal.

And upon this it was ruled that such ordinance did not conflict with the charter provision aforesaid; this court remarking: "The evident object of the provision of the organic law relative to the title of an act was to have the title like a guideboard, indicate the general

contents of the bill, and contain but one general subject which might be expressed in a few or a greater number of words. If those words only constitute one general subject; if they do not mislead as to what the bill contains; if they are not designed as a cover to vicious and incongruous legislation, then the title can stand on its own merits, is an honest title and does not impinge on constitutional prohibitions. The same line of remark applies to the title of an ordinancce when drawn as above said. But doubtless a much more abbreviated title for the present ordinance would have answered every purpose for including in its body matters germane to the general subject of which its various provisions treat.''

In other words, the title of an act, under our Constitution, is to be but a general indicator of the subject treated of in the body of the act; that subject must, indeed, be clearly expressed in the title, but that title need do no more; it need not descend into details, nor make a digest of the statute, of which it forms the head-piece.

In New Jersey, under a similar constitutional provision, an act entitled, ''An act relating to the assessment and revision of taxes in cities of this State,'' was held not to infract the constitutional provision in question notwithstanding the body of the act related to the mode of appointing the members of boards of assessment and revision in cases of taxation, and that the title sufficiently expressed the subject. [State ex rel. v. Hammer, 42 N. J. L. 438.]

Treating of this topic, Bishop tersely says: ''The title need indicate the subject only in a general way, without entering into details; and all auxiliary provisions properly attaching to it, and constituting with it one whole, may be embraced within the enactment.'' [Statutory Crimes (2 Ed.), sec. 36a.] To the like effect is the ruling in Bockstruck's case, 136 Mo. 335.

Under these authorities, the title to the act before the court is not obnoxious to objection, albeit capable of much valid abbreviation.

For illustration, in the present instance, abbreviation in the title would not invalidate should it take this form: "An act relating to the manufacture and sale of distilled and vinous liquors." Under such a comprehensive title, the mere matter of detail, such as a license tax, etc., etc., would be entirely germane to that title.

3. But the contention of the State is that the litigated tax is not "*a tax on property,*" but a tax on the *business or occupation* of the liquor dealer. If this contention of the State be valid, then it must be so upon the theory that although we have a case where the title of the act, its guidepost, signboard and indicator, speaks of "a State license tax *on* distilled liquors," yet the body of the act may validly treat of a tax on the *occupation or business* of the liquor-dealer. But if this contention is to be held valid, it must be so held alone on the basis that it does not violate the Constitution for the *title* of an act to announce a tax *on property* and the *body* of the act to announce a tax on a *business or occupation.* But on this hypothesis, what becomes of the constitutional command that the subject of the act "shall be *clearly expressed in its title?*"

4. The act, however, shows not only in its title, its alpha, that it is a tax on property, but when it comes down to its omega, to-wit, its twenty-fifth section, it then and there proclaims the nature of the exigency of the situation, by declaring not that there will be danger to the *public morals* to let the statute run and reach its customary consummation in a period of ninety days, but on the contrary thereof asserts that: "There being a *deficiency* in the *revenues* of the State, creates an emergency," etc. In other words, the *public morals* might "go hang," just so that the *coveted revenues* could be promptly secured. And yet this statute, with a property tax at its one end, and an emergency clause "*for revenue only,*" at its other, is stoutly asserted to be, and designated as, simply a *mere police regulation.* And in order to countervail and meet, if possible, this palpably incorrect declaration of the purpose of the act,

it is urged that: ··The emergency clause is no part of the bill; in fact, the bill might become a law without the emergency clause. Had it been defeated, and failed to receive the necessary two-thirds vote in either branch of the Legislature, it would not have appeared in this case and defendant would not then have had the opportunity to assert that it indicated the full context of the act and was the only meaning that should be given to it.'' While it is true that "the emergency clause is no part of the bill; in fact, the bill might become a law without the emergency clause," yet it is equally true, as stands confessed in the statement above quoted, that it required a two-thirds vote in each branch of the Legislature to carry the emergency clause through; and therefore it is pretty good evidence of the intention of more than a majority of the legislators as to their reason and purpose for enacting the law. Because, whenever doubts may arise as to legislative action, to-wit, its *intention* in enacting a law; in order to solve and settle such doubts, resort may be had to, and examination made of, other laws, whether *in pari materia* or on merely cognate subjects, enacted by the Legislature of the same State, whether at recent or remote periods.

On this subject an eminent text-writer (Sutherland on Stat. Constr., sec. 288), says: "For the purpose of learning the intention, all statutes relating to the same subject are to be compared, and, so far as still in force, brought into harmony, if possible, by interpretation, though they may not refer to each other, even after some of them have expired or been repealed."

Pursuing the same line of thought and theory, this court has recently determined that in order to discover the intention of the Legislature in enacting a certain law, it was entirely legitimate to search for the intention of the Legislature in enacting such law, among the provisions of a statute approved on the day after such law was enacted, although such subsequently-approved law had been pronounced by this court, months before our recent ruling, as clearly unconstitutional. [Sales v. Barber Asphalt Co., 166 Mo. 671.]

Now, if laws passed at remote periods, laws *in pari materia,* or cognate-subject laws, laws that have expired or been repealed, unconstitutional laws, may have the shell of their legislative nuts cracked by the hammer of judicial investigation, in order to extract the kernel of their intention, then *a fortiori,* may a similar result be reached where the shell of the legislative nut has been cracked by the *legislators themselves,* and the kernel of their intention extracted and spread on the platter of an emergency clause ready for immediate use. We hold the emergency clause in this instance as conclusive evidence of the legislative purpose, and that purpose, *revenue.*

5. But there are other considerations which support the just-expressed view that the act is a revenue measure. In the first place, whenever it is ascertained that a license fee is a tax when imposed mainly for the purpose of revenue, as is abundantly established by authority (Dillon's Munic. Corp., sec. 768; Ward v. Maryland, 12 Wall. 418; Cooley's Const. Lim. pp. 201, 494; Railroad v. Hoboken, 41 N. J. L. 71; Glasgow v. Rowse, 43 Mo. 479; Cooley on Taxation, 403, et seq.); it is competent for the courts to make examination and see if, under a mere power to license, the power of taxation for revenue is exercised. [Burlington v. Ins. Co., 31 Iowa 102; Muhlenbrinck v. Commissioners, 42 N. J. L. 364; s. c., 36 Am. Rep. 518.]

In City of St. Louis v. Spiegel, 75 Mo. 145, the litigated ordinance showed that it was imposed for the purpose of revenue, and upon this, this court said: "In this case it is apparent at first blush that the license fee is imposed for the purpose of revenue. That such fee is also imposed for the purpose of regulation does not deprive it of the salient characteristics of a tax."

So also in City v. Weitzel, supra, we drew the obvious distinction between an exorbitant charge if made by ordinance for affixing garbage plates to each wagon, and an ordinance which authorized only a reasonable charge for so doing; a charge covering the actual expense of each plate; and holding that the latter would be

*regulation* and not taxation, and that the *former* could not be used as a *cloak* for the *latter,* approving the ruling in Spiegel's case, above cited.

And in Cooley's Const. Lim. (6 Ed.), p. 242, it is said: "A license is issued under the police power; but the exaction of a license fee with a view to revenue would be the exercise of the power of taxation." In another work of the same eminent author, it is said: "The right of any sovereignty to look beyond the immediate purpose to the general effect neither is, nor can be, disputed. The government has general authority to raise revenue and to choose the methods of doing so; it has also general authority over the regulation of relative rights, privileges and duties, and there is no rule of reason or policy in the government which can require the Legislature, when making laws with the one object in view, to exclude from its attention the other. Nevertheless, cases of this nature are to be regarded as cases of taxation. Revenue is the primary object, and the regulation results from the methods of apportionment that are resorted to in obtaining the revenue. Only those cases where regulation is the primary object can be specially referred to the police power." [Cooley on Taxation (2 Ed.), 587.]

Under these authorities, every symptom of the questioned act points towards *revenue* and not towards *regulation;* the saloon-keeper under this act sells his beverages as was his wont before, without let or hindrance, except on such terms as the act provides. There are no provisions looking to any inspection of the liquors sold across the bar, nor any other safe-guarding of the public morals, but at every turn the act has simply and solely a *revenue aspect.* And this, it seems, was the contemporaneous construction placed upon the act by those officials on whom was laid the duty of enforcing, and executing in detail, its provisions. And inasmuch as the State has interposed no denial of what is charged in defendant's brief to be such construction, it is here inserted: For instance, the Attorney-General has placed his construction on the bill, and given it to the

chief executive of the State, in which, among other things, he says: "I do not believe that liquors manufactured in this State and shipped into other States are subject to the provisions of this bill. . . . It is also my opinion that a fair and reasonable construction of the bill will exclude from its provisions pure alcohol sold in this State for manufacturing and other purposes." And his views are further contained in the following published statement of the Governor when he signed the bill: "I have signed the bill, and, as construed by Attorney-General Crow, it is not complicated or ambiguous in its terms and can be readily enforced without vexation or annoyance to the interests affected. The construction of the Attorney-General as to the legal effect of this law will be followed in the enforcement of its provisions by the executive department. The provisions of the law may be concisely stated: It imposes no taxes upon wines, either domestic or foreign. It exempts pure alcohol from taxation. It exempts from taxation all brandy, whiskey, rum and gin sold for consumption in other States. The law imposes a tax of ten cents a gallon upon whiskey, brandy, rum and gin and all other distilled and vinous liquors except such as are exempted as herein set forth sold for use in this State. This, in the opinion of the Attorney-General, is the proper interpretation of the law, and, as I have stated, will be the interpretation followed by the officers immediately charged with the enforcement of the law. It may be well to make this statement in view of the widespread misapprehension of the provisions of the law."

Even the stamps issued pursuant to the act and signed by the State Treasurer confirm this view, for on them is printed: "Act approved April 17, 1901, taxing distilled liquors ten cents per gallon."

But aside from the tacit admission of the statement above quoted, courts will take judicial notice, if necessary, of the facts of contemporary history, in order properly to construe a statute. [Lake v. Caddo Parish, 37 La. Ann. 788.] But such adventitious aids

are, however, quite unnecessary here, since the act is so plain as to be its own interpreter. The familiar rule being that where the Legislature has in its own enactment stated the meaning it intends to convey, such statement is *conclusive*. [Sutherland's Stat. Constr., sec. 307, and cas. cit.] Elsewhere, the same learned author treats of the same topic, thus: "Any provision in a statute which declares its meaning or purpose, is authoritative. Whether it relates to the object of a whole act, or of a single section, or of a word, it is a declaration having the force of law. It is binding on the courts, though otherwise they would have understood the language to mean something different." [Ib. sec. 402.]

6. But pursuing other branches of the subject-matter presented by the record, we come to the ruling made in Welton v. Missouri, 91 U. S. 275; where it was settled that a *tax,* the amount of which is *dependent* on the *amount* of the property *sold,* is in fact, a tax *on the property itself*. Such being the case, the act under review must be held to impinge on the provisions of section 3 of article 10 of our Constitution, which declares concerning taxes, that: "They shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax."

In City v. Spiegel, supra, where it was held that the license fee was a tax, such tax was held invalid as not conforming to the constitutional provision above quoted, in that it discriminated in favor of meatshops in one portion of the city, and against others in another portion thereof; imposing in the first instance a tax of $25, and on the second a tax of $100.

But right here it is proper to remark that there is no discrimination made, or unequal taxation imposed, by the law in question in so far as concerns liquors "manufactured for sale in this State," and liquors brought or shipped into this State for sale herein," because in each instance a tax of ten cents per gallon is imposed on every gallon of liquor whether manufactured in, or brought into, this State, etc. This tax

on liquor brought into this State, being of the same amount as that required to be placed on liquor manufactured within our borders, constitutes what is termed in Hinson v. Lott, 8 Wall. 148, "a complimentary provision necessary to make the tax equal on all liquors sold in the State."

But while this is true, it is equally true that section 24 of the act under review prevents and prohibits a repeal of the provisions of chapter 22, Revised Statutes, 1899, which relates to dramshops. Now, under the provisions of section 3015 of that chapter, express permission is given to wine-growers of this State "to sell wine of their own production in any quantity on their own premises." Not so, however, with the seller of wine brought or shipped into this State for sale herein, for he has to pay his "special license tax of ten cents for every gallon," etc., whether sold on his own premises or elsewhere.

But the above is not the only instance where unjust discrimination occurs in the act under discussion, for while the manufacturer in this State of distilled and vinous liquors, manufactured for sale within our borders, pays *his* tax, the manufacturer in this State, who manufactures such articles for sale beyond our borders, pays *nothing*. Now suppose our Legislature should enact a law that a man who raises horses for sale in *this* State should pay for such right and privilege a tax of ten cents a head for every horse thus raised, but that the man on an adjoining farm who raises horses for sale in other States, should have that right and privilege without paying a cent of tax therefor; would any one contend that such a tax law could stand for a moment when brought for investigation before a court of justice? Will it be said that when the Constitution says, "Taxes shall be uniform upon the same class of subjects within the territorial limits of the authority leving the tax," such rule of uniformity holds good as to every sort and species of personal property except *whiskey?* What authority is there for such assertion? We hold there is none.

And although defendant is not prosecuted as a manufacturer of either distilled or vinous liquors, yet if it is apparent on the face of the act that it was framed and enacted as an *entirety,* and would not have received the legislative sanction but for the fact that it was intended to operate as a whole, then, this being the case, any party prosecuted under the challenged act may raise the question of the unconstitutionality of a portion of the act in the circumstances already related, and thereby show the invalidity of the whole. We hold the whole act must go by the board in consequence of those circumstances. [State v. Bockstruck, 136 Mo. 353-4.]

We therefore are of opinion that the act in question, violating, as it does, the rule of uniformity prescribed by the Constitution in the various particulars mentioned, is altogether invalid.

7. And the questioned act not only violates the constitutional rule as to uniformity, but also contravenes the rule prescribed by section 4 of the same article, which commands that: "All property subject to taxation shall be taxed in proportion to its value." Of course, this is not done, and can not be done, if some property is taxed, and other of like kind, exempted altogether. Besides, section 6 of the same article specifically describes what property shall be exempt; and section 7 of that article declares: "All laws exempting property from taxation, other than the property above enumerated, shall be void." Will it be pretended that whiskey manufactured in this State for sale outside of this State *is not property?* If *property,* by what authority does the Legislature, in defiance of the plain language of section 6, add to the list of exemptions in that section contained? The bare fact that section 6 specifically defines *what* property shall be exempt from taxation, is an *affirmative prescription* of the Constitution equivalent to a *negation* or *prohibition* against any act of the Legislature being enacted which should add to the list of exempts. And, under repeated rulings of this court, it was beyond the power of the

Legislature to add to or swell the list designated in section 6, since the maxim, *expressio unius,* controls such designation and forbids any augmentation whatever.  [Bank v. Graham, 147 Mo. 250; Henderson v. Koenig, 168 Mo. 356; Ex Parte Arnold, 128 Mo. loc. cit. 264; Marx & Haas Clothing Co. v. Watson, 168 Mo. 133.]

Not content, however, with the affirmative prescriptions of section 6, above said, the Constitution-framers ordained section 7, aforesaid, which nullifies any law extending or enlarging such exemptions.  The foregoing remarks will also include alcohol, whether manufactured within this State for the purpose of exportation or not, or whether such fluid be regarded or not as a "distilled liquor."

8.  But the rule of uniformity established by section 3 of article 10, supra, is co-extensive with every form and phase of statutory enactment, whereby the exodus of money may be compelled from the pockets of the taxpayer into the hand of the taxgatherer.  This rule extends even to *police regulations.*

Thus, it has been determined in regard to such regulations when pertaining to the liquor traffic, that they should conform to constitutional restrictions on the taxing power in so far as to secure uniformity in their operation upon manufacturers or dealers of the same class.  [Black, Intox. Liq., secs. 55 and 109; 17 Am. and Eng. Ency. Law, 223, and cas. cit.]   The act under review makes that very unconstitutional discrimination already pointed out, since it coerces payment from some manufacturers while wholly omitting others; and pursues the like discriminatory course towards the ordinary seller of vinous liquors as already pointed out. So that, should the contention of the State be correct that the act being investigated is only a "police regulation," still, even under that view, the act stands condemned for its lack of uniformity.

9.  What is known as the "Wilson Law" was approved August 8, 1890.  Under its terms it is provided: "That all fermented, distilled, or other intoxicating liq-

ors or liquids transported into any State or Territory or remaining therein for use, consumption, sale or storage therein, shall upon arrival in such State or Territory be subject to the operation and effect of the laws of such State or Territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise." This statute removed the difficulty which had formerly prevailed, so far, at least, as *liquors* were concerned, as to state statutes interfering with importations from foreign countries or other States of the Union, in regard to "original packages" being non-taxable by state laws or affected by state police regulations, so long as such packages remained in an unbroken state, etc.; and subjected such original packages to the immediate operation of the state laws, so soon as landed in the State into which shipped. This law was held to have this effect and to be constitutionally valid, which effect is mentioned in In re Rahrer, 140 U. S. 545. Prior to that statute and ruling, however, under the provisions of what is known as the "commercial clause" of the federal Constitution, to-wit, prohibiting any State from laying "any imposts or duties on imports or exports" (sec. 10, art. 1, U. S. Const.), and under the provisions of section 8 of the same article which gives Congress power "to regulate commerce with foreign nations, and among the several States and with the Indian tribes," it had frequently been ruled that while the original package which had been imported from a foreign country or another State remained unbroken, it could not be subjected to state legislation looking either to state taxation or police regulation without interfering with the power of Congress to regulate commerce with foreign nations and among the several States; but that after such package had been broken, then it would thereby become merged in the general mass of property, and be subject to the same laws as then prevailed as to personal property, the pro-

duct of such state; but that prior to that time such tax-ation or such regulation which discriminated against such foreign product, and in favor of a home product, could not be tolerated without usurping the constitutionally granted power of Congress regarding such matters. [Welton v. Missouri, 92 U. S.  275; Tiernan v. Rinker, 102 U. S. 123, and prior and subsequent cases.]

But the Wilson Law obviated, as above seen, all trouble on that subject, so far as concerns liquors, and now they are subject to state laws and regulations precisely the same as home products of that character. For these reasons it is that no question can possibly arise on this record in regard to the challenged statute contravening the power of Congress to "regulate commerce with foreign nations, and among the several States," etc.

10.   But though this is the case, still the statute under revision requires those who manufacture for sale in *this* State, liquors, to pay a tax of ten cents a gallon, yet from the manufacturer who manufactures in this State, liquors for sale in *other* States, no tax is demanded, and in so doing, the act violates that portion of the fourteenth amendment of the Constitution, which guarantees to each citizen of the United States and of each particular State "the equal protection of the law."

As resulting from these views, the judgment of the trial court should be affirmed.   *Burgess, C. J.*, and *Robinson J.*, concur *in toto; Marshall, J.*, concurs in holding the act unconstitutional, and, hence, concurs in the result.

"I agree to an affirmance of the judgment on the grounds stated in the first and tenth paragraphs of the opinion, and for the further reason that the title of the statute does not conform to the requirements of section 28, article 4, of the State Constitution."   *Brace, J.*

*Gantt, J.*, concurs in holding the information insufficient whether the act be held constitutional or unconstitutional, and that the act is unconstitutional because the title to the act is misleading, and is not appropriate to an act levying a license tax.  He holds, however, that

no provision of the Federal Constitution is violated by the act. He concurs in paragraph 9 of the opinion, but not in the argument and conclusions reached in the other paragraphs of the opinion.

*Valliant, J.,* concurs in the result for the reason only expressed in his separate opinion filed.

### SEPARATE OPINION.

VALLIANT, J.—In my opinion, the judgment of the circuit court sustaining the motion to quash the information should be affirmed, but as I do not concur in all that is said in the majority opinion in this case, I deem it proper to state very briefly the ground upon which I concur in the result.

I am of the opinion that the information is sufficient to charge a misdemeanor under the statute, if the statute itself is valid. If the information were not sufficient, then the question as to the validity of the statute would not be before us for decision.

I am also of the opinion that if the passage of the act in question was an exercise of the police power of the State, then it is not rendered invalid because a revenue incidentally results therefrom. But, on the other hand, if the passage of the act was an exercise of the power to tax for revenue, then it must be judged in the light of article 10 of the Constitution.

When the validity of an act of the legislative department of the government is called in question it is the duty of the court to resolve every reasonable doubt in favor of the act and to pronounce it invalid only when it clearly violates a provision of the Constitution. Taking the act of the General Assembly now in question as a whole, considering both its letter and its spirit, I can make nothing else out of it than a purpose to levy a tax of ten cents a gallon on distilled liquors manufactured in the State for sale here or brought into the State for that purpose.

Section 6 of the act may have been designed to give to it the aspect of police regulation, but if so that aspect

appears in that section only, which is complete in itself. It imposes a special tax of $1.50 for the license required, which is independent of the tax of ten cents a gallon on the distilled liquors.   Section 7 forbids the license commissioner to sell stamps to any one not having such license.   The effect of section 6 is to give censorship over the persons to be permitted to engage in the business, and that of section 7 to limit the privilege to such persons, and to that extent the act does provide police regulation, but the regulation thus provided does not extend beyond the issuance of the license.   All there is of police regulation in the act begins and ends in those two sections.   It has no connection with the tax imposed in the fourth section.   It is argued that the imposition of a high license tax is in itself a form of police regulation.   That is so when it is imposed on the privilege to do business, but when the law prescribes conditions as prerequisite to the right to do the business, then when those conditions have all been satisfied the property employed in the business is subject to taxation only as required in article 10 of the Constitution.

It is argued that so complete is the police power of the Legislature over the liquor traffic that, for the purpose of restricting it, even a direct property tax may be levied in excess of the constitutional limit as to other property.   But that proposition is not in this case; its discussion will be timely when the Legislature passes a property tax with a view to restricting the traffic; here we have simply a property tax laid only to raise revenue.

The title is, "An act to provide for a state license tax on distilled liquors," etc.   There is an inconsistent association of words in that sentence.   A license tax is one thing, a property tax another; the one is a tax on a privilege or occupation, the other a tax on property. We must understand the Legislature to have intended the one or the other, that is, either a license tax or a tax on distilled liquors.   There is no such thing as a license tax on distilled liquors.   To give effect to the word "license" in the sentence quoted, we must supply

other words to indicate a privilege, and what privilege is intended to be exercised in regard to the distilled liquors, which would be to take a great liberty with the act. The only way to render the sentence intelligible is to discard the word ''license,'' and that we may do because in that connection it is meaningless. With that word discarded we have the title,''An act to provide for a state tax on distilled liquors, . . . to create the office of special license commissioner and to provide for the appointment thereof by the Governor.''

It is in section 4 of the act that the tax is imposed. The terms used in that section show a design to give it the aspect of a license or privilege tax, and to the extent to which that design is effected it is in conflict with the subject of the act as expressed in the title. The language is: ''There shall be paid for the right and privilege to manufacture for sale in this State distilled liquors . . . special license tax of ten cents for every gallon,'' etc. If the language had been ''There is hereby imposed a tax of ten cents on every gallon of distilled liquors manufactured for sale in this State,'' etc., the effect would have been exactly the same as that intended by the language used, and it would then have been in harmony with the title of the act. In Brookfield v. Tooey, 141 Mo. 619, this court held a tax that was in form and by name a license tax to be a tax on property. That was not a liquor-traffic license and, therefore, all that is said in that case may not be applicable here, but it is to this extent applicable, viz.: the court is not bound by the mere form of expression used in the act if the purpose is otherwise manifest; is not bound to adjudge it to be a license tax merely because it is so named, if on the whole act it clearly appears to be a property tax, which in my judgment this is. As a property tax it is indefensible under the Constitution, and for that reason the judgment of the circuit court was right and should be affirmed.